## Steele v. Kinkle & Lehr.

1. L purchased from K a lot of land on a credit of one, two and three years, with notice of a mortgage, taking from K a bond for title, on the payment of the purchase money, and with a stipulation that his notes could be satisfied in the notes of solvent men—L afterwards sold to S, without disclosing the fact of the mortgage, but without any practice to conceal it, and assigned to him the title bond of K. By an agreement between all the parties, S executed his note in lieu of the notes of L, which were received by K; S took possession, and on the falling due of the first of his notes, tendered the amount, and offered to pay any part of the first note of L unpaid, and demanded a title; and on the declaration of K, of his inability, because of the unsatisfied mortgage, S offered to leave the premises in the condition he found it, and to rescind the contract, which not being acceded to by K, he abandoned the possession—Held, 1. That the mere silence of L, of the existence of the mortgage, was not a fraudulent concealment, as S knew that the title was not in L, but in K, and by ordinary diligence could have ascertained the true state of the title. 2. That the substitution of the notes of S for those of L, was not evidence of a change of the original contract. 3. That as the notes for the purchase money were payable in the notes of solvent men, title could not be demanded until the last note fell due. 4. Whether the title could be demanded from the vendor until the solvency of the makers of the notes was ascertained by payment—Quere.

2. A Court of Chancery will never impute fraud when the facts and circumstances out of which it must arise, may consist with pure intentions.

3. A Court of Chancery will not aid a purchaser to rescind a contract, even in a case of fraud, where there has been a want of common and ordinary diligence.

Appeal from the Chancery Court at Huntsville.

THIS bill was filed by the plaintiff in error, to rescind a contract, entered into between him and the defendant, Lehr. The bill charges, that in January, 1837, Lehr purchased of Kinkle, a lot of ground, in the town of Huntsville, at four thou-

sand one hundred dollars, payable one thousand one hundred in hand, and the residue in three annual instalments of one thousand dollars each, payable in notes on good and solvent men in North Alabama, and that Kinkle executed to him a bond, in the penalty of eight thousand dollars, with condition to make title to the said lot, on the payment of the notes. The bill further charges, that at the time of this sale, there was an incumbrance on the property, consisting of a mortgage, executed by Kinkle and others, to the Solicitor of the Treasury of the United States, for upwards of thirty-six thousand dollars, and of which Lehr was ignorant, but that the same was duly registered.

That on the 4th December, 1837, orator purchased the lot from Lehr, with an express understanding, between him and Lehr, that a good and clear title, in fee simple, should be made thereof to orator, as soon as the notes made by Lehr to Kinkle, should be discharged. In pursuance of which, Lehr assigned the bond for title to orator, as follows: " I assign to G. M. Steele, the within bond for title, and the benefits to which I am entitled under the same, and hereby insure that the title shall be made according to said bond, except that the same shall be made to Steele."

The bill further charges, that as part of the consideration of the purchase by orator, and for the purpose of performing Lehr's contract of purchase, orator, pursuant to a contract between himself, Kinkle and Lehr, and in accordance with the terms of orator's purchase, executed two notes in payment of the two instalments from Lehr to Kinkle, which fell due on the first January, 1839 and 1840, for the payment of one thousand dollars each, and for the residue of the purchase money, executed two bonds to Lehr, for the payment of one thousand dollars each, on the first January, 1841 and 1842, which he transferred by indorsement, to a firm by the style of Echols & Hollowell.

Orator charges, that he has always been able to pay his debts, and on the first January, 1839, offered to Kinkle, to pay him the full amount of the bond to Kinkle, which fell due on that day, and also offered any balance remaining on the first note of Lehr to Kinkle, if Kinkle would convey said lot to orator, which he failed to do, and admitted that he knew not when he could relieve his title from the incumbrance. Thereupon, ora-

tor determined to rescind the contract and abandon the possession of the property, and so informed Kinkle at the time, offering to pay one hundred and fifty-five dollars for the rent of the ground, and to leave the place in as good condition as he received it, or to pay him the difference, if any: all which Kinkle refused, and that Lehr had also notice of the same without delay. Orator immediately abandoned possession of the property, and alleges, that at the time of the purchase, he was ignorant of the existence of the mortgage; that Kinkle and Lehr, if the latter knew of its existence, concealed it from him: that at the time of the rescision of the contract, it was in full force, and was at the filing of the bill, so far as orator knew. That Kinkle has commenced suit on the two bonds executed to him by orator, in the County Court of Madison, and the other in the hands of Echols & Hollowell. The prayer of the bill, is for a rescision of the contract and cancellation of the bonds given for the purchase money; for an injunction to the suits commenced, &c. which was granted.

Kinkle, by his answer, admits the sale to Lehr, but denies that Lehr was ignorant of the mortgage on the property; that the mortgage was duly recorded, previous to that time, and in addition, that Lehr had a distinct knowledge of it, and entered into the contract on the assurance that defendant would be able to make title by the time specified. Admits that complainant purchased as stated in the bill from Lehr; that he took an assignment of the title bond, and executed his notes to respondent, but does not admit, that complainant was ignorant of the mortgage, which was recorded in Huntsville, where complainant then, and still resides, and was of general notoriety. He further admits the tender, demand of title, &c. and that he declined the proposition, because he was not then bound to make title. Admits that he declared he did not know when he could relieve the incumbrance, but states that he was fully able to give any security for the title, to be made according to his contract; and admits that complainant then declared his intention of rescinding the contract, and abandoning the possession, but did not leave it in as good condition as he found it. Admits that he has commenced suit on the notes, and denies any concealment on his part, of the incumbrance, and so far as he knows and believes on the part of Lehr.

He further states, that on the 6th February, 1839, an act of Congress was passed, vesting the heirs of John Brahan, with the entire interest in the debt secured by the mortgage, on the lot purchased by complainant, and that by an arrangement with the heirs of Brahan, he had power to make a deed to the lot previous to the first January, 1840, and has since entirely discharged the mortgage, and is able to make a title, according to his origiual contract.

Lehr, by his answer, admits the contract for the sale of the lot to complainant, as set forth in the bill, but denies concealing the incumbrance, which he says was recorded in Huntsville, where complainant resided, was generally known, and he thinks must have been known to complainant.

Echols & Hollowell, deny all knowledge of the facts stated in the bill; state that they received the two last mentioned bonds from Lehr, in payment of a debt, and shortly after mentioned the fact to complainant, who made no objection, but stated they were payable in Alabama Bank notes.

The Chancellor, on motion, dissolved the injunction, from which the complainant prayed, and obtained this appeal.

The error assigned, is the dissolution of the injunction.

HOPKINS, for plaintiff in error, insisted, that as the contract between Kinkle and Lehr was, that the notes for the purchase money might be discharged in notes of solvent men, in North Alabama, and that title should be made when the purchase money was paid; that on the receipt by Kinkle of the notes of complainant, and tender of the residue unpaid, he was bound to make title to complainant, and that being unable to do so, complainant had a right to rescind the contract.

That there was a fraudulent concealment by Lehr, of the incumbrance on the lot; that time is of the essence of a contract in a Court of equity, and therefore, it is unimportant that Kinkle is now able to make title. He cited, 1 Story's Com. on Eq. 217, Note, § 208; Sug. on Vendors, 45; 1 Ball & Beattie, 111; 1 Bro. Ch. 440; 2 ib. 390, 420; 13 Wendell, 518; 1 Johns. Ch. Rep. 370, 4 Porter 297; 311, 374, 385, 528.

McCLUNG, contra—contended, that by the proper construction of the deed for title, the parties had no right to call on Kinkle, until the last instalment fell due from Lehr, the first

purchaser. That when property was sold like this, upon a credit, it was no ground for rescinding the contract, that the vendor cannot make title before the time stipulated for making it by the contract, it is sufficient if he is able to do so, at the time he agreed to make it, which is the case here. That no fraud is chargeable in the bill: the mere fact that the incumbrance was not disclosed by Lehr, is not evidence of a fraudulent concealment. He insisted that the principle, that time was of the essence of a contract, did not apply to a case like this, and that if it did, there was no right to demand the title, when the rescision was attempted by complainant.

ORMOND, J.—The facts of this case are, that in January, 1837, the defendant, Lehr, purchased of the defendant, Kinkle, a lot of land in Huntsville, at the price of four thousand one hundred dollars, of which sum, one thousand one hundred dollars was paid down, and the residue secured by three notes of one thousand dollars each, falling due in one, two and three years; Kinkle executing a bond to make title on payment of the purchase money; at the time of the purchase, a mortgage existed for a large sum of money on the lot in question, and other property created by Kinkle, but of which Lehr, at the time of the sale, had express notice.

In December, of the same year, Lehr sold the land to the complainant, for four thousand dollars, payable in equal instalments in four years; two bonds for one thousand dollars each, being executed, payable to Kinkle, and received by him in lieu of two of the notes held by Kinkle on Lehr: at the time of the sale, the complainant received from Lehr the title bond, which Kinkle had executed, with an indorsement thereon, by Lehr, by which he "insured" that the title should be made to Steele, according to the stipulation of the bond. At the time of the sale, Lehr did not disclose to the complainant, the existence of the mortgage, nor does it appear that he had any knowledge of it.

On the first January, 1839, the complainant offered to Kinkle to pay his note due at that time, and any balance remaining due of the first note of Lehr to Kinkle, and demanded a title, which Kinkle being unable to make, in consequence of the mortgage, he declared his intention to abandon the premises,

and rescind the contract, and did so accordingly; and the object of this bill is to have the contract rescinded, and the notes for the purchase money delivered up and cancelled.

It is not charged in the bill, that their was any unfair prac tiec resorted to on the part of Lehr, to prevent the complainant from being apprised of the mortgage on the land, which it is stated in the answer of both defendants, had been duly recorded, and was a matter of general notoriety in the town of Huntsville, in which all the parties lived, and the question is, whether in a case like the present, the mere omission, on the part of Lehr, to state the fact of the existence of the mortgage, will in law, amount to fraud.

Where a vendor professes to be able to make a clear title in fee, either by a direct assertion to that effect, or while he offers to make such a title, by concealing the fact of his inability to do so, his conduct cannot be otherwise than fraudulent. It cannot be reconciled with fair dealing, because he knows at the time, that a disclosure of the truth of the case, would prevent the sale, and therefore in such a case, if the purchaser is not chargeable with negligence, the contract may be rescinded by him even before an eviction; as was held by this Court in the case of Young v. Harris, 2 Ala. Rep. See also Edwards v. McLeay, Cooper, 308.

Here, there was no charge that there was express fraud by false assertion, or any device resorted to, to put the complainant off his guard, and prevent inquiry into the true state of the title; nothing in short, existed which could be considered " industrious" concealment. The mere silence of Lehr, at the time of the sale, will not of itself, in our opinion, be a fraudulent concealment. A fraudulent concealment, is the failure to disclose a material fact, which the vendor knows himself, which he has a right to presume the person he is dealing with, is ignorant of, and of the existence of which the other party cannot, by ordinary diligence, become acquainted. Although fraud may be inferred from other facts, it is never presumed, and it would be the grossest injustice to infer fraud from the mere silence of a vendor of the existence of an incumbrance, where the abstract of the title was sufficient to put the purchaser on enquiry. In the case cited of Edwards v. McLeay, and which is one of the strongest in favor of relief to be found in the books

stress is laid on the fact, that the defect of title, could not be collected from the abstract.

In this case, the complainant knew that the title was in Kinkle, and by inquiry, could have ascertained its condition; his failure to do so, is chargeable only on himself, and is a want of that common or ordinary diligence, which a Court of Chancery always requires, in cases like the present, before its aid can be obtained. In the case of Young v. Harris cited from 2 Ala. Rep. where there was a fraudulent concealment, the contract was rescinded, expressly on the ground that the purchaser could not by ordinary diligence, have discovered the defect of the title, and the same principle was again affirmed in the case of Camp v. Camp, 2 Ala. Rep.

It may be added, that a Court of Chancery will not impute fraud, when the facts and circumstances out of which it must arise, may consist with pure intentions; but to create such an imputation, the facts must be such, that they are not explicable on any other reasonable hypothesis. Yet, it is perfectly consistent with all the facts stated in the bill, that Lehr was acting with entire good faith.

By the original contract between Lehr and Kinkle, it was stipulated that the notes for the payment of the land, which became due in January, 1838, 1839 and 1840, might be discharged in the notes of solvent men in North Alabama. The case has been argued, as if these notes could be tendered at any time, and a title demanded; but it is very certain, that Kinkle stipulated to retain the title until the last period of time arrived, otherwise it might happen that the person whose notes was tendered, though solvent at the time, might not be so when the notes became due, yet the title was not to be made until the notes were paid and satisfied. This stipulation being for the benefit of Kinkle, he might waive, and it is insisted he has done so.

The allegations of the bill admitted by the answer, which are supposed to establish this proposition, are the following: "Your orator made a contract with said Lehr, whereby your orator purchased of him the parcel of ground aforesaid, with an express understanding, between said Lehr and your orator, that a good and clear fee simple title should be made thereof, to your orator, so soon as the notes made by said Lehr to said

Kinkle, for said ground, should be discharged as aforesaid, in pursuance of which the said Lehr, on the day and year last aforesaid, by his written instrument, signed by him on the back of said title bond, assigned the said title bond to your orator, as follows: I assign to G. M. Steele, the within bond, for a title, and all the benefits to which I am entitled under the same, and hereby insure that the title shall be made according to said bond, excepting that the same shall be made to said Steele.

"As part of the consideration of your orator's said purchase, and for the purpose of performing said Lehr's contract of purchase aforesaid, your orator, pursuant to an agreement between himself, said Kinkle, and said Lehr, to that effect, and in accordance with the terms of your orator's said purchase, executed his two writings, obligatory on the day and year last aforesaid, and bearing that date to said Kinkle, in payment of the two instalments from Lehr to Kinkle, which were payable according to the condition of the said title bond, on the 1st January, 1839, and 1840."

There is certainly some ambiguity in the facts here stated, but a very slight examination will show, that it was not the intention of the parties, by this arrangement, to make any other change in the original contract, than to substitute the complainant for Lehr, in the purchase of the land—which arrangement was obviously intended for the security of the complainant; that no further charge in the original contract was contemplated by the parties, is evident, both by the assignment of the bond and the terms in which it is conceived. If, as now contended for, the delivery to Kinkle of the notes of the complainant, discharged the condition of the bond for title, why was the bond assigned to the complainant, and the benefits to be derived therefrom to Lehr, conveyed to the complainant? And especially, what propriety would there be in requiring Lehr to "*insure*" that the title would be made according to the bond? Certainly, all this imports that the title should be made in future, by the performance of the condition of the bond.

That condition was, to pay in notes of solvent men, in North Alabama, at stipulated periods of time. It is not necessary now to inquire, whether on the delivery of the last note to Kinkle, of a man then solvent, he would have been required immediately to make title, or whether the true meaning of the contract

is not, that the title was not to be made until the *solvency* of the makers of the notes was ascertained by payments, because, at all events, it is very certain that the meaning of the contract is, that the persons whose notes could thus be given in discharge of the contract, were to be solvent at the time they were due, and payable.

The bonds were executed by the complainant, on the 4th December, 1837, for the payment of one thousand dollars on the 1st January, 1839, and a like sum on the 1st January, 1840. If these bonds, as is now contended, were received in satisfaction of the obligation of Lehr, and thereby discharged the condition of the bond for title, Kinkle became himself the guarantor of the continuing solvency of the complainant. If there had been such a radical change as this, made in the contract originally entered into, it should have been stated explicitly and plainly, so that it could have been met and answered, and not left to doubtful and ambiguous interpretation. It was also incumbent on the complainant, to have explained the incongruity and inconsistency of the contract now set up with the fact of his taking an assignment of the title bond to Lehr, with the warranty of the latter, that the title would be made according to its terms.

The answers of both defendants, are opposed to any such construction of the contract. They both deny the ignorance of complainant, of the existence of the incumbrance which they say was matter of general notoriety in the place where all the parties lived, and was there recorded; and Kinkle says, that he refused to make title when demanded by the complainant, because *he was not bound to do so, until after payment of the whole amount due him;* language which is irreconcilable with the contract now set up by the complainant.

It appears that Kinkle is now able to make title to the lot, and tenders a title in his answer, but the view of the case here taken, renders it unnecessary to consider that, and other questions made at the bar. Let the decree of the Chancellor, dissolving the injunction, be affirmed.