25   15
94   47

## DILL *vs.* THE STATE.

1. When there is the least conflict, in a material point, between the evidence adduced by the State and that offered by the defendant, a charge, based upon the State's evidence, and indicating that the jury may look to it alone in passing on the guilt or innocence of the defendant, is improper ; but if there is no conflict in the testimony, and the conclusion drawn by the court is the only one warranted by the facts and the law arising upon them, such a charge may be given.

2. If one see another about to perpetrate a felony, he may use such force to prevent it as may be necessary ; and if, while so engaged, he is intentionally killed, it will be murder in the slayer.

3. As to reasonable apprehension of imminent danger to life or limb, when relied on as a defence.

APPEAL from the Circuit Court of Walker.

Tried before the Hon. ALEX. B. CLITHERALL.

THE facts are set out at length in the opinion of the court.

W. S. EARNEST, for the appellant.

M. A. BALDWIN, Attorney General, *contra*.

LIGON, J.—The appellant was indicted in the Circuit Court of Walker county, for an assault with intent to murder. On the trial, as appears by the bill of exceptions, several witnesses were examined, who deposed to the following facts: That sometime in the month of January, 1851, the appellant and one John Irwin were quarrelling in a retail grocery in the town of Jasper, while one Burden stood between them, endeavoring to pacify them. John Henson took off his coat, and stepped up to the parties, but said nothing to either of them. The quarrel was kept up from before sunset until after dark. One Jefferson Henson, a relative of John Henson, was also engaged in the quarrel with Dill (the appellant), and both of them had become angry with him about a horse race, and frequently declared, during the quarrel, that they would have the race, the forfeit, or blood. Some time after night-fall (the moon giving light), it was announced that the race was ready to be run. John Henson then left the grocery, in company with several others, among them John Irwin and the appellant; the former before, and the latter behind the witness. The appellant called out to Irwin, naming him, and saying, "You are a damned liar; you said you could whip me, and that is a damned lie." Irwin and the accused were at this time near each other, and John Henson stepped between them, and proposed that they should leave the matter to him to adjust. This was agreed to by both parties; and he decided they should drop the quarrel and make friends. While this was going on, Irwin was on the left, and the accused on the right side of John Henson, who was thus engaged in attempting to reconcile the matter. The accused attempted to go around John Henson, to get within reach of Irwin; but John Henson moved his body so as to interpose it between the two, and the accused made an an attempt to stab Irwin. John Henson, seeing this, pushed him off; the accused, recovering from the push, exclaimed, "God damn you," and instantly stabbed John Henson, with a large pocket-knife, near the left nipple, inflicting a wound which confined him to his bed

Dill v. The State.

for three or four weeks. The knife penetrated the cavity of the body near the heart, or was turned aside by a rib; the physicians could not say which, but they pronounced the wound dangerous. The accused was proved to have had his knife in his hand for ten or fifteen minutes before John Henson was stabbed; he was told to put it up, but denied having it out. Several persons had persuaded the accused to go home during the evening, but had failed to get him to do so. This is the substance of the proof.

The court charged the jury, in effect, 1st, That unless the prisoner would have been guilty of murder, if Henson had died from the effects of his wound, he could not be found guilty under this indictment of an assault and battery with intent to murder; that the assault and battery not being denied, the only question to consider was, the intent with which the blow was given; and this they were to ascertain from all the circumstances of the case. The court then correctly defined malice, and proceeded: that, if, on applying the law to the facts as proved, the jury should find the intent to kill coupled with malice, it would be their duty to convict as charged in the indictment.

2nd. That if the testimony of the witnesses for the State were true, and if the blow struck by the defendant was aimed at John Henson, the defendant would have been guilty of murder if John Henson had been killed by the blow.

3rd. That when one interferes to stop a brawl, and exercises no other force than is necessary for the object, having previously announced his purpose, the killing of him by one of the assailants will be murder.

4th. That where, from the nature of the attack, a man has reasonable ground to believe that there is an attempt or design to take his life, a man will be excusable for killing his assailant, although it should afterwards appear that no felony was intended: yet the man who thus acts, acts at his peril, and these grounds must appear on the trial to the jury to have been reasonable grounds, in order to excuse or justify him.

5th. The court further charged the jury, that, if the evidence did not satisfy them that the defendant was guilty of an assault with the intent to kill and murder, they could, if

they saw fit, find him guilty of an assault and battery, and assess a fine of not less than one cent, and not to exceed two hundred dollars.

The defendant then asked the court to charge the jury, that, if they believed from the evidence others had made threats of great bodily harm, and were improperly following the defendant, and detaining him, and the party assaulted had, by words or acts, induced the defendant to believe that the assailed was one of the parties, or ready to aid the parties in any assault that might be made upon the defendant, and the defendant was in fear of great bodily harm, and that he acted from a sense of personal danger, and not from malice, then they may acquit, although the defendant was mistaken in the actual danger. This charge the court refused to give, and charged the jury, that, to justify a person acting under apprehension from threats, there must appear to the jury reasonable ground for that person to believe that the threats are, at the time he acts, about to be executed.

The defendant further asked the court to charge the jury, that, if they believed the circumstances surrounding him were sufficient to create in his mind a reasonable impression of impending danger, or that great bodily harm was about to be inflicted upon him, he was excused in using such force as he thought necessary to protect him, even though death ensued, and the prisoner was honestly mistaken in the circumstances. This charge the court refused to give, and re-charged the jury, that the party thus acting must satisfy the jury that he had reasonable ground to believe that the threats of violence were about to be put in execution.

The accused excepted to the charges given, and the refusal to give those that were asked, and he now assigns them for error.

The first charge given by the court is free from any just exception. By its terms, the jury are told that they must look to every fact and circumstance which was in evidence before them, in order to ascertain the intention of the accused, and if from these they believed the stab with the knife was made with malicious intent, it would be their duty to convict. The facts of the case very clearly show that the

accused had his knife in his hand, ready to use, before the parties left the grocery ; that shortly after leaving it, the accused attempted to renew the quarrel with Irwin, and Henson interposed as a peace-maker, when, on his own proposition, he was selected by Irwin and the accused to settle the dispute between them.    While thus engaged in adjusting the quarrel, he saw the accused in the act of attempting to stab his antagonist, Irwin, and he (Henson), getting between them, pushed the accused back, who, on recovering himself, cursed Henson, and plunged his knife into his left breast, near his heart.    The person, thus stabbed, had not quarrelled with the accused, had taken no part in the dispute between the parties, but was acting as peace-maker between them.— Had the blow been fatal, there can be no question the accused would have been guilty of murder, as the absence of all provocation on the part of John Henson, the weapon used by the accused being deadly in its character, and the force with which its use was accompanied, are circumstances from which the law implies malice.—1 Russell on Crimes, 514, 515, 516, 519.

The second charge simply asserts, that if the jury believed the witnesses on behalf of the State, the accused would have been guilty of murder, if John Henson had died from the blow given with the knife by the accused.    We were, at first, inclined to doubt the propriety of this charge, as it appears that witnesses were examined on behalf of the accused in the court below, and the charge refers the jury only to the testimony on behalf of the State, and seems to indicate that they might look to this alone in passing upon the guilt or innocence of the accused.    This is clearly improper, where there is the least conflict, on a material point, between the evidence offered in defence and that produced by the prosecution ; but if there is no conflict in the testimony, and it clearly goes to establish the conclusion contained in the charge, there would be no error in giving it.    In this case, there is no conflict whatever, and the conclusion drawn by the court in the charge referred to, is the only one which the facts and the law arising upon them will warrant.

The third charge was correct, but more favorable to the accused than the facts of this case will warrant.    All the evi-

dence tends strongly to show, that the only purpose of John
Henson, at the time he was stabbed by the accused, was to
hinder the latter from assaulting John Irwin with his knife,
and in all probability killing him; and this, too, when Irwin
was off his guard, and neither attempting nor threatening to
do the accused any bodily harm.   If one see another about to
perpetrate a felony, he may use such force to prevent it as
may be necessary for that purpose, and, if, while so engaged,
he is intentionally killed, it will be murder in the slayer.

The fourth affirmative charge, and the two charges asked
by the accused and refused by the court, as well as the
charges accompanying the charges refused, have, in our opin-
ion, no predicate in the testimony, as set out in the bill of
exceptions; and as far as the charges given are concerned,
the court erred in favor of the accused.   The testimony does
not show any attack made on the accused, nor any design on
the part of Irwin or Henson to make such attack.   The
accused renewed the quarrel with Irwin after they left the
grocery, without any provocation on the part of the latter;
and was himself in the act of making a deadly blow at Irwin,
when he was hindered by the timely interference of John
Henson, whom he immediately stabbed, with the evident
intent of killing him.   In such a case, we are wholly at a
loss to see, how the accused could invoke the aid of the
legal principle, which is too favorably set out in the fourth
charge, and perverted in the charges asked and refused.—
Pritchett v. The State, 23 Ala. 39.

We are unable to perceive any error in the record, preju-
dicial to the appellant, and the judgment and sentence of the
Circuit Court must be allowed to stand.