| | |
|---|---|
| 78 | 331 |
| 93 | 199 |

# Jordan & Sons *v.* Pickett.

*Action for Damages on account of Fraudulent Concealment.*

1. *Action for fraud; lies when.*—A fraud which entitles a purchaser of property to a right of action for deceit, ordinarily consists in the misrepresentation or concealment of a material fact, on which he has a right to rely, and does rely, operating an inducement to the contract, whereby he is deceived or injured. It is not indispensable that it should be the sole inducement; if it contribute materially it is sufficient; and in case of active representations, knowledge of its falsity is not essential.

2. *Same.*—Silence, to be an actionable fraud, must relate to material matter, known to the party, and which it was his duty to communicate under the circumstances. Though a concealment may be tantamount to a misrepresentation, every omission to disclose facts, though material, is not necessarily fraudulent. The true rule lies between the civil law, requiring the seller to disclose every defect known to him, and the rule adopted in some cases requiring the purchaser to make inquiry, omitting it at his peril.

3. *Same.*—The concealment must be for the purpose of continuing a false impression or delusion under which the purchaser has fallen, or of suppressing inquiry and thereby effecting a sale—with intention to conceal or suppress—and it must operate an inducement to the contract.

4. *Fraudulent intention.*—Intention is a question of fact for the jury; but where the fact and its materiality are known to the seller, and the

[Jordan & Sons v. Pickett.]

suppression is willful and intentional, it may be regarded as done with intention to deceive, and the purchaser, not having equal access of information, may be regarded as defrauded.

5. *Fraud; when action lies for.*—When the means and sources of information are equally accessible to both parties, the ignorance of the purchaser is regarded as self-deception, unless art or artifice is employed to prevent investigation, or stifle information. If this be not the case, when it rests in the personal knowledge of individuals unknown, or exclusively within the knowledge of the seller, the concealment of a material fact, though without art or artifice, is willful or intentional, and sufficient to sustain a right of action.

6. *Same.*—Fraud and damage must concur, to furnish a cause of action, the damage being the natural and proximate consequence of the fraud. The concealment, however material, which is not a moving inducement to the purchaser, works him no injury.

7. *Charge on part of evidence.*—When witnesses are examined on behalf of both parties, and there is a conflict, a charge is improper which refers to the jury the evidence in behalf of one of the parties only, and indicates that they look to that alone.

APPEAL from Bullock Circuit Court.

Tried before the Hon. H. D. CLAYTON.

This action was brought by E. W. Pickett against Jordan & Sons, to recover damages for fraud alleged to have been committed by them in the sale of a mortgage, given by one Giles Williams to Jordan & Sons, by withholding from him the fact that a mule, embraced in the mortgage, had been traded by Williams, and that one then in his possession was not covered by it.

Joe Pickett, a brother of plaintiff, testified that about the first of January, 1883, Giles Williams moved on plaintiff's plantation, on which plaintiff then resided, taking with him his stock and other personal property, and rented land from plaintiff; that Giles owed Jordan & Sons an account, which was secured by a chattel mortgage to them; that at the request of plaintiff, he went, about the 15th of January, to Jordan & Sons, to see about settling with them; that Watt Jordan, a member of the firm, told him that Giles owed them about $264, and that it could be settled for $250. Witness then asked what was the value of the property covered by the mortgage, when Jordan wrote out a memorandum of the property which, at his valuation, was worth $240, and included a mule valued at $120. Witness then informed Jordan that he would see plaintiff and let him know his decision; and having seen him, he wrote a note as plaintiff's agent, accepting the offer of sale. He further testified that he had seen the stock which Giles had in his possession when the mortgage was transferred, and that the mule he had at that time was a dark brown one, but he did not know what its name was before the mortgage was transferred. The mortgage of Giles Williams to Jordan

& Sons was introduced in evidence, which conveyed, among other things, one black horse mule named *Scott.*

Plaintiff then testified in his own behalf, that he authorized Joe Pickett to make the negotiations with Jordan & Sons in regard to the mortgage; that after the note referred to in Joe Pickett's testimony, he met Watt Jordan, paid him the $250, and took a written transfer of the mortgage to himself; that as he was leaving the store, Jordan called him back, and asked him if he did not wish the account transferred also; to which he replied, that he did, and Jordan thereupon transferred it to him; that in the month of August, 1883, he first found out that the mule in Giles' possession was not described in the mortgage; that he had several times seen the mule, six weeks prior to the time the mortgage was transferred to him; that said mule was a dark brown color, nearly black; and that he did not know the name of the mule before the mortgage was transferred to him. He further testified, that he had never obtained possession either of the mule described in the mortgage, or the one Giles had in possession on his place; that before the mortgage was transferred to him, and after Giles had moved on his place, and while in possession of the dark brown mule, Giles told him that Jordan & Sons had a mortgage on all he had; that in January, 1884, after demand on Giles, he brought a detinue suit for the dark brown mule, before a justice of the peace; and that the mule being of greater value than $50, the suit was dismissed by the justice for want of jurisdiction.

It was also proved that Watt Jordan, when the detinue suit was pending, wrote a note to the justice, in which he used the following language: "I hereby certify, and will swear, that the mule Giles Williams had in his possession in January, 1883, is the mule intended to be conveyed by chattel mortgage dated January 18, 1882, and made to Jordan & Sons, and by them transferred to E. W. Pickett, on the 28th day of February, 1883."

The defendants then introduced Watt Jordan, a member of the firm of Jordan & Sons, who testified that, about the middle of January, 1883, Joe Pickett came to him, as the agent of plaintiff, and asked him how much Giles Williams owed his firm, and what he would take for the account; that he told him the amount of the account, and stated what he would take for it; that Joe Pickett then asked him how much property Giles had, and what it was worth; that witness, in reply, made a rough calculation, which is shown in Pickett's testimony; that nothing was said by either of them about a sale or transfer of any mortgage, nor was anything ever said about said sale and transfer, except as hereafter stated in his testimony; that on

February 28, 1883, plaintiff came to his store, and brought the $250, which he paid him, and the account was then transferred to Pickett; that when plaintiff was about to leave the store, he (Jordan) called him, and told him that he had a mortgage on Giles, and being of no further use to him, he would transfer it to him; that upon plaintiff's saying he would like to have it, he transferred the mortgage to him. This witness further testified, that on the day the mortgage was made by Giles Williams to Jordan & Sons, and before its execution, Giles said that he might want to trade the black mule *Scott*, which he then owned, for a dark brown mule belonging to his firm, but that he would like to try him before any trade was made; that his firm agreed to this, upon the understanding that the mortgage was to be executed on the black mule *Scott*, and that if afterwards Giles decided to take the dark brown mule (also called *Scott*), he should be the one covered by the mortgage.

There was testimony as to the value of the mule which Giles had in his possession, in the fall of 1883, when the plaintiff attempted to foreclose his mortgage. There was, also, evidence tending to show that the agreement between Giles and Jordan & Sons, at the time of the exchange of the mules, was, that if Jordan & Sons came to the conclusion that the mortgage, as written, was not sufficient to hold the dark brown mule, Giles was to execute another mortgage upon the particular mule, but that they had never required it to be done. The evidence of defendants tended to show that the dark brown mule was called *Scott*, and that of the plaintiff that he had a different name. This was, substantially, all the evidence.

The court, among other things, charged the jury as follows: The law never permits a person, dealing with another, to fail by an act of omission to give to such other a fact known to him, which failure to give such information operates as an inducement to that other person to make a purchase or transfer, which fact he ought to have communicated, which was an inducement acted on by the other, and by which he is damaged. To the giving of this charge the defendants excepted.

The court then gave the following written charges, at the request of the plaintiff, to each of which the defendants separately excepted: (1.) That the written transfer indorsed on the mortgage in evidence conveys to Pickett the written mortgage, and the property purporting to be therein conveyed, and all the rights of the defendant under it. (2.) That the written transfer does not transfer, or purport to transfer, any parol mortgage.

[Jordan & Sons v. Pickett.]

The defendants then requested the court to give the following written charges, which the court separately refused to give, and defendants separately excepted:

"(1.) If the jury believe, from the evidence, that on the day of the execution of the mortgage in question, Williams made an agreement with the defendants, by which he was to leave with them the black mule *Scott*, and take the dark brown mule, with the understanding that, if he concluded to make the exchange, that such dark brown mule should be treated and considered as covered by the mortgage that day executed; and if they further believe that, at the time of the transaction between plaintiff and defendants, the defendant, with whom the transactions were had, honestly and in good faith believed that, by that agreement, the dark brown mule was embraced in and covered by said written mortgage, then his failure to declare the fact of such agreement to Pickett was not a fraudulent concealment, and no action can be maintained therefor.

"(2.) If the jury believe, from the evidence, that at the time of the transactions between the plaintiff and defendants, and at the time of the transfer of the account and mortgage in evidence, defendants honestly believed that, under the agreement between them and Williams—if the jury believe there was such an agreement—the mule then in the possession of Williams was embraced in and covered by the written mortgage, then their failure to disclose the fact of such agreement to plaintiff, or to his agent, did not constitute a fraudulent concealment, for which an action will lie in favor of plaintiff against the defendants.

"(3.) If the jury believe the evidence as testified to by the witness Jordan, then they must find a verdict for the defendant.

"(4.) If the jury believe the facts as testified to by the witness Jordan, relative to the exchange of the mules, and the agreement between them as to the mortgage, then the Jordans had a valid parol mortgage upon said mule, and the transfer and assignments made to Pickett and testified to, transferred such mortgage to him; and if they further believe that Pickett brought a suit for such mule, in the court of a justice of the peace, and that such suit was defeated, upon the ground that the mule was worth over fifty dollars; and if they further believe that said Pickett had ample time to bring a suit for such mule in a court having jurisdiction of such suit, and that such mule was lost to him by his failure to bring such suit, then he can not hold defendants liable for loss sustained by such failure on his part, and the jury must find for defendants.

"(5.) If the jury believe the facts as testified to by the witness Jordan, relative to the exchange of the mules, and the agreements between him and Williams as to the mortgage being upon the last mule held by said Williams, then the Jordans had a valid parol mortgage upon said mule, and the transfer and assignment made to Pickett and testified to, transferred said mortgage to Pickett so as he could have recovered said mule upon it, had he brought suit for the same in a court having jurisdiction; and the fact that said Pickett brought suit for said mule in a court not having jurisdiction, and lost said suit, does not make said Jordans liable for the loss sustained by such failure on his part.

"(6.) If the jury believe, from the evidence, that by the agreement between Williams and Jordan & Sons, the defendants, it was agreed that the mule in question should be treated and considered as covered by the mortgage executed by said Williams to Jordan & Sons, then that created a valid parol mortgage upon the mule, and the transfer of the account and note and mortgage to Pickett by Jordan & Sons operated as a transfer of such parol mortgage, and gave Pickett a right to sue for and recover said mule; and if the jury further believe that such right of Pickett to sue for and recover said mule was lost by reason of his having brought suit therefor in a justice of the peace court, then Jordan & Sons are not liable in this action to account to Pickett for damages he sustained by the loss of the suit, and the consequent failure to recover such mule.

"(7.) The failure of Pickett to recover the mule in question, in the suit before the justice of the peace, did not preclude him from recovering the mule in an action before a court having jurisdiction of such cause; and if he negligently failed to bring such suit, and thereby lost said mule, the defendants are not liable in this action for such loss.

"(8.) Under the evidence in this case, Jordan & Sons were not under any obligation to disclose to Pickett the facts relative to the exchange of mules testified to, and the agreement relative to the mortgage upon the same, and their mere failure to do so, gives no right to Pickett to maintain this action.

"(9.) Although the jury may believe, from the evidence, that Jordan & Sons failed to disclose the fact that the only mortgage they held upon the mule in possession was a verbal mortgage; yet, if they believe that such failure to discover that fact did not operate to induce Pickett to purchase the claim, but that he would have bought the claim even had he known the mortgage was merely a verbal one, then they must find for the defendants.

"(10.) Although the jury may believe that Jordan & Sons failed to disclose the fact that the mule then in the possession of Williams, the mortgagor, was not covered by the written mortgage given in evidence; even then they can not find for the plaintiff in this action, unless they further believe that Jordan & Sons knew, at the time, that such mule was not covered by said mortgage, and also believe that they failed to make such disclosure for the purpose of influencing the plaintiff in purchasing the account and mortgage given in evidence.

"(12.) Before the jury can find for the plaintiff in this action, they must believe, from the evidence, that Jordan & Sons not only failed to disclose the fact that the mortgage did not embrace the mule in question, but they must also believe that they failed to disclose such fact with intent to deceive Pickett, or for the purpose of influencing or inducing him to make the purchase of the claim against the mortgagee, Williams.

"(14.) If the jury believe, from the evidence, that Jordan & Sons had a written mortgage on some property, and a verbal mortgage upon the mule in question; and if they further believe that, in the conversation between the witness Joe Pickett and said Jordan & Sons, relative to the purchase of the claim against the mortgagee, Williams, nothing was said by either party as to the character of the mortgage held by Jordan & Sons, but all that passed between them was that Jordan, in estimating the value of the accounts, stated that he held a mortgage upon certain property, and that upon such statement alone Pickett wrote the letter in evidence, accepting the proposition of Jordan & Sons for the sale of such claim; then the failure of Jordan to disclose that a part of the property upon which he claimed a mortgage was held only by a verbal mortgage, was not a fraudulent concealment, for which an action will lie against Jordan & Sons.

"(15.) If the jury believe, from the evidence, that the mortgagee, Williams, stated to the plaintiff, Pickett, before the transfer of the note and mortgage in evidence, that Jordan & Sons had a mortgage upon all his property; and if they further believe that, in purchasing the claim against Williams, Pickett was influenced as much by the statement of Williams as he was by the failure of Jordan & Sons to disclose the fact that the mortgage upon the mule was only a verbal mortgage; and if they further believe that Jordan & Sons had no intent to deceive by such concealment; then their failure to disclose such fact was not such a fraudulent concealment as entitles the plaintiff to maintain this action.

"(16.) If the jury believe, from the evidence, that Williams moved to the plantation of Pickett before the transfer of the claim in question, and that the mule described in the mortgage was a black horse mule named *Scott;* and if they further believe that the only mule in Williams' possession was a dark brown mule; and if they further believe that, by the exercise of ordinary care, Pickett could have discovered, before he paid the money and took the transfer of the mortgage, that the mule in Williams' possession was not such a dark mule as was described in the mortgage; then the jury can not find for the plaintiff, although they may believe that Jordan & Sons failed to disclose the fact that the mortgage they held upon such mule was a verbal mortgage; unless the jury further believe that they failed to make such disclosure with the intent to injure or defraud Pickett."

The charges given, and the refusal of the charges requested, are now assigned as error.

TROY & TOMPKINS, for appellant.

POWELL & CABANISS, and WATTS & SON, *contra.*

CLOPTON, J.—The fraud, which entitles a purchaser of property to a right of action for deceit, ordinarily, consists in the misrepresentation or concealment of a material fact, on which he has a right to rely, and does rely, operating an inducement to the contract, and whereby he is deceived and injured. It is not indispensable that the misrepresentation or concealment shall be the sole inducement; it is sufficient if it materially contributes, and is of such character that the purchaser would not have consummated the contract, had he known the falsity of the statement, or the fact suppressed. In case of an active representation, knowledge of its falsity is not essential. A contract, obtained by misrepresentation, may be avoided, or an action for damages sustained, though the asserting party may not know the statement is false. It is as much a fraud at law to affirm as true what is untrue, though not known to be so, as to assert what is known to be untrue. The law imposes the duty of ascertaining the truth of the statement before making it, and demands in case of omission that the representation should be made good.—*Munroe v. Pritchett,* 16 Ala. 785.

While it may be more difficult to define, with clearness and precision, the distinction between suppression and falsehood, as constituting actual fraud, it may be said, generally, that silence, in order to be an actionable fraud, must relate to a material matter, known to the party, and which it is his legal duty to communicate to the other contracting party, whether the

duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances. Though a concealment may be tantamount to a misrepresentation, and equally effective to deceive or mislead, every omission to disclose facts, though material, is not necessarily fraudulent. The rule, best adapted to the proper conduct of business transactions, lies between the two extremes—the rule of the civil law, which requires the seller to disclose every defect known to him, that affects the merits of the contract, or which the purchaser is interested in knowing; and the rule adopted in some of the cases, that it is incumbent on the purchaser, if he does not take a warranty, to ask for information, and that he can not complain of a failure to communicate facts, which he could have learned by inquiry.

In *Steele v. Kinkle*, 3 Ala. 352, fraudulent concealment is defined to be, "the failure to disclose a material fact, which the vendor knows himself, which he has a right to presume the person with whom he is dealing is ignorant of, and of the existence of which the other can not, by ordinary diligence, become acquainted." Concealment implies design, or purpose. That it may furnish a sufficient cause of action, the fact suppressed must not be only material, but the materiality must either be known to the seller, or the facts must so constitute an element of the value of the contract, as to authorize the inference of knowledge of its materiality. The concealment must be for the purpose of continuing a false impression or delusion under which the purchaser has fallen, or of suppressing inquiry, and thereby effecting a sale—with the intention to conceal or suppress—and it must operate an inducement to the contract.

Though the intention is a question for the jury, where the fact and its materiality are known to the seller, and the suppression is willful or intentional, it may be regarded as done with an intention to deceive or mislead, and the purchaser, not having equal access of information, may be regarded as defrauded.—*Hanson v. Edgerly*, 29 N. H. 343; *Beninger v. Corwin*, 4 Zab. 257: *Cornelius v. Molloy*, 7 Penn. 293; 1 Smith Lead. Cases, 322, 323. It has been said, too strongly, that the conduct of the suppressing party should be so fraudulently moulded, that the negation of the suppressed fact must be implied.—1 Whart. on Contr. § 251. In *Steele v. Kinkle*, *supra*, it was held, that mere silence as to the true state of the title will not, of itself, be a fraudulent concealment, where the abstract of the title is sufficient to put the purchaser on inquiry. When the means and sources are equally accessible to both parties, the ignorance of the purchaser is regarded as self-deception, unless art or artifice is employed to prevent investi-

[Jordan & Sons v. Pickett.]

gation, or stifle information.  But, when the access to information is not equal, as when it rests in the personal knowledge of individuals unknown, or exclusively in the knowledge of the seller, the concealment of a known material fact, though without art or artifice, if willful or intentional, is, on the same principle as a misrepresentation not known to be false, sufficient to sustain a right of action.

The alleged deceit consists in the failure to disclose that, by a parol agreement contemporaneous with the execution of the written mortgage, a mule, then owned by the defendants, was subsequently exchanged and substituted for the one specially described in the mortgage.  It is not claimed that there was express fraud by misrepresentation, or that there was any device employed by the defendants to put plaintiff off his guard, or to discourage inquiry.  Speaking from the record, the mortgagor, having rented land from the plaintiff, had moved with his stock on his plantation, and the plaintiff had seen the mule in the possession of the mortgagor, before he purchased the debt and mortgage.  Ordinary diligence—a casual examination of the written mortgage—would have shown that the mule described therein did not answer the description of the mule in the possession of the mortgagor, and would have put the plaintiff on inquiry.  While the defendants did not represent any particular mule as included in the mortgage, it may be considered that the furnished estimated value referred to the substituted mule, then in the mortgagor's possession.  Conceding that the agreement to exchange and substitute created only a parol mortgage, and did not, as between the parties, bring the substituted property under the operation of the written mortgage, a question on which courts differ; an honest and *bona fide* opinion, or belief, that the substituted mule was thereby included in, and covered by the written mortgage, is inconsistent with a willful suppression for the purpose of deceiving or misleading.  Mere silence in respect to the parol agreement, not deemed or believed to be material, such silence being the consequence of an honest mistake of its legal effect, and of a *bona fide* opinion that the substituted property was included in the written mortgage as if originally incorporated, is not a fraudulent suppression.  There is wanting the element of concealing for the purpose of deceiving or misleading.

Fraud and damage must concur to furnish a cause of action, the damage being the natural and proximate consequence of the fraud.  The concealment of a fact, however material, which is not a moving inducement to the purchaser, works him no injury.  We do not mean, the relative effects of inducements moving from different sources shall be determined by a comparison of their respective motive power.  It is sufficient if a

[Evans v. Cincinnati, Selma & Mobile Railway Co.]

fraudulent concealment of the defendants materially contributed to effect the purchase, irrespective of any other cause. But, if the failure to disclose the parol agreement did not induce the plaintiff to purchase the claim; if he would have purchased it had he been informed that the mortgage was merely verbal; if he purchased it, not relying on the defendants to fully and fairly state the facts, but on the statements of the mortgagor, he is without right to a recovery.    Further: if the plaintiff purchased the claim because secured by a lien on personal property, without reference to whether it was a written or parol lien, he practically and substantially obtained what he bargained for.    The transfer of the claim carried with it the lien for its payment, whether written or verbal, for the enforcement of which the law furnished a remedy.    If its fruits were lost by his negligence or failure to institute proper legal proceedings, when the lien was available, the defendants are not responsible for damage sustained by reason of such negligence or failure.

On the foregoing principles, charges numbered one, two, seven, nine, eleven, twelve, and sixteen, requested by the defendants, should have been given.    The instructions, based, in whole or in part, on the hypothesis that the jury believed the evidence of the witness Jordan, were properly refused.    Where witnesses are examined on behalf of both parties, and there is a conflict, a charge is improper which refers the jury to the evidence on behalf of one of the parties only, and indicates that they may look to that alone.—*Dill v. State*, 25 Ala. 15; *Tesney v. State*, 77 Ala. 33.

Reversed and remanded.