387 So.2d 176 (1980)
William G. MARSHALL and Rhonda Carolyn Marshall
v.
Rodney K. CROCKER, as Guardian of Ray G. Crocker, a person of unsound mind.
79-40.
Supreme Court of Alabama.
August 22, 1980.
*177 Norborne C. Stone, Jr. of Stone, Partin & Granade, Bay Minette, for appellants.
Francis A. Poggi, Jr., Fairhope, for appellee.
*178 FAULKNER, Justice.
This is an appeal from a decree of the Circuit Court of Baldwin County holding that there was no fraud in the sale of a house that had been damaged by fire. We affirm.
In 1977, through a real estate broker, the Marshalls bought a 15-year-old house from Rodney K. Crocker, as Guardian of Ray G. Crocker, a person of unsound mind. (There was neither contact nor negotiation between the Marshalls and Crocker.) The purchase price of the house was paid by a cash payment, a first mortgage and a second mortgage to Crocker payable in eight months.
About two weeks after the Marshalls moved into the house, Mr. Marshall discovered that there had been a fire in the attic. He called the broker, and asked him, "Did you know there was a fire over here?" The broker replied, "No, I didn't." Subsequently, the broker went to the house, inspected the attic, and, indeed, found that there had been a fire there. (The evidence shows that the fire occurred in 1971.) Nothing more was said or done by either Marshall or the broker until the broker sought to help Crocker by calling Marshall about paying the second mortgage. At that time, a year had passed by, and the mortgage was in default. Marshall let it be known that he was not going to pay because he felt like some fraud had been involved. The broker offered to purchase the house from Marshall. No agreement between them was ever consummated. Eventually, Crocker began foreclosure proceedings.
After foreclosure was begun, Marshall brought suit to enjoin, alleging misrepresentation and deceit in the sale of the house to him.
Rodney Crocker testified that Ray Crocker lived there until he went to a nursing home; that while the roof sagged there had been no damage from leakage; that the sagging was normal for that age house, and could result from the way the roof was constructed. An expert witness testified that repair done after the fire was structurally sound, but 40 to 50 percent of the area where work needed to be done is not structurally sound. He opined that the roof structure was not structurally sound and the cause of this was the fire.
On the question of misrepresentation of the soundness and the fire, the evidence shows that neither the broker nor the owner said anything. Moreover, the evidence shows that Marshall did not inquire about the fire when the house was shown to him on two occasions; he made no effort to inspect the attic before the sale-his inspection was two weeks after he moved in, and at that time he found evidence of the fire.
The issue presented on appeal is whether the trial court erred by finding that there was no actionable fraud committed by the seller when he did not reveal the fire damage. We hold that it did not.
Mr. Justice Clopton stated in Jordan & Sons v. Pickett, 78 Ala. 331 (1884), that:
The fraud, which entitles a purchaser of property to a right of action for deceit, ordinarily, consists in the misrepresentation or concealment of a material fact, on which he has a right to rely, and does rely, operating an inducement to the contract, and whereby he is deceived and injured. It is not indispensable that the misrepresentation or concealment shall be the sole inducement; it is sufficient if it materially contributes, and is of such character that the purchaser would not have consummated the contract, had he known the falsity of the statement, or the fact suppressed. In case of an active representation, knowledge of its falsity is not essential. A contract, obtained by misrepresentation, may be avoided, or an action for damages sustained, though the asserting party may not know the statement is false. It is as much a fraud at law to affirm as true what is untrue, though not known to be so, as to assert what is known to be untrue. The law imposes the duty of ascertaining the truth of the statement before making it, and demands in case of omission that the representation should be made good.

*179 While it may be more difficult to define, with clearness and precision, the distinction between suppression and falsehood as constituting actual fraud, it may be said, generally, that silence, in order to be an actionable fraud, must relate to a material matter, known to the party, and which it is his legal duty to communicate to the other contracting party, whether the duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances. Though a concealment may be tantamount to a misrepresentation, and equally effective to deceive or mislead, every omission to disclose facts, though material, is not necessarily fraudulent. The rule, best adapted to the proper conduct of business transactions, lies between the two extremes-the rule of the civil law, which requires the seller to disclose every defect known to him, that affects the merits of the contract, or which the purchaser is interested in knowing; and the rule adopted in some of the cases, that it is incumbent on the purchaser, if he does not take a warranty, to ask for information, and that he can not complain of a failure to communicate facts, which he could have learned by inquiry.
In Steele v. Kinkle, 3 Ala. 352, fraudulent concealment is defined to be, "the failure to disclose a material fact, which the vendor knows himself, which he has a right to presume the person with whom he is dealing is ignorant of, and of the existence of which the other can not, by ordinary diligence, become acquainted." Concealment implies design, or purpose. That it may furnish a sufficient cause of action, the fact suppressed must not be only material, but the materiality must either be known to the seller, or the facts must so constitute an element of the value of the contract, as to authorize the inference of knowledge of its materiality. The concealment must be for the purpose of continuing a false impression or delusion under which the purchaser has fallen, or of suppressing inquiry, and thereby effecting a sale-with the intention to conceal or suppress-and it must operate an inducement to the contract.
Though the intention is a question for the jury, where the fact and its materiality are known to the seller, and the suppression is willful or intentional, it may be regarded as done with an intention to deceive or mislead, and the purchaser not having equal access of information, may be regarded as defrauded. ... When the means and sources are equally accessible to both parties, the ignorance of the purchaser is regarded as self-deception, unless art or artifice is employed to prevent investigation, or stifle information. But, when the access to information is not equal, as when it rests in the personal knowledge of individuals unknown, or exclusively in the knowledge of the seller, the concealment of a known material fact, though without art or artifice, if willful or intentional, is, on the same principle as a misrepresentation not known to be false, sufficient to sustain a right of action.
The rules of law stated in Jordan were reiterated by Mr. Justice Somerville in Corry v. Sylvia Y Cia, 192 Ala. 550 (1915). They are applicable to this case.
Here Marshall could have, by ordinary diligence, easily discovered evidence of the fire. He was not prevented from inspecting the attic before he bought the house. As a matter of fact, the real estate agent testified that Marshall inspected the house inside and out, and had ample opportunity to look at anything he wanted to, including the attic.
We opine that his failure to inquire, plus his failure to inspect, negates actionable fraud under the facts of this case. It does not appear that Marshall was unlearned or in any way afflicted with any physical or mental disability. Moreover, we do not find any evidence of intent to deceive either on the part of the real estate broker or the seller.
The trial court heard the case ore tenus, and under our standard of review, its findings will not be disturbed unless plainly *180 erroneous. Adams v. Bethany Church, 380 So.2d 788 (Ala.1980). We find no errors warranting a reversal of the court's decree.
AFFIRMED.
TORBERT, C. J., and EMBRY and BEATTY, JJ., concur.
MADDOX, J., concurs in the result.
ALMON and SHORES, JJ., concur with MADDOX, J.
JONES, J., dissents.
MADDOX, Justice (concurring in the result).
I concur in the result. This case was heard ore tenus and, on review, we indulge in a presumption that the findings of fact which are supported by evidence have the force and effect of a jury verdict.
ALMON and SHORES, JJ., concur.