This is a case involving the fraudulent sale of a house. Defendant, Mary Leo, petitioned this Court for a writ of certiorari following the Court of Civil Appeals' affirmance,480 So.2d 570, of the trial court's denial of her motion for summary judgment, directed verdict, and post trial motions in favor of plaintiff-appellee, Charles Neill. The trial court had entered a $7,500.00 judgment based upon a jury verdict for plaintiff Charles Neill.
Leo contends that the Court of Civil Appeals erred by affirming the trial court's denial of her summary judgment and directed verdict motions. We agree, and reverse.
Charles Neill purchased a used house in Huntsville, Alabama, on April 12, 1979, for $61,000.00. Mary Leo, d/b/a the Leo Agency, was the real estate listing broker for the house Neill purchased. Stan Erwin, a real estate salesperson and friend of Neill, showed the house to Neill.
In July 1984, after living in the house for over three and one-half years, Neill discovered that the house contained 1,976 square feet of living area and 332 square feet of garage area. Soon after Neill's discovery, he filed suit against Leo, charging that Leo had fraudulently misrepresented the square footage of the house he purchased. Neill's allegations are based upon a notation printed in a multiple listing service booklet shown to him by Erwin, which listed the square footage of the house as 2,300 square feet of living space and 390 square feet of garage area. Leo prepared the listing that was published, including the square footage notation, based upon calculations and measurements made by her husband. Leo moved for summary judgment. This motion was denied, as were Leo's subsequent motions for directed verdict, JNOV, and new trial.
Leo argues that Neill failed to present sufficient evidence to support an action against her for fraudulent misrepresentation of the square footage of the house Neill purchased. A careful, extensive examination of the record leads us to the same conclusion.
At the outset, we note that:
 [T]he standards of review for a directed verdict and a summary judgment are essentially the same. Both are proper only where there is a complete absence of *Page 574 
proof on a material issue or where there are no disputed questions of fact on which reasonable people could differ. Coggin v. Starke Bros. Realty Co., 391 So.2d 111 (Ala. 1980); Ritch v. Waldrop, 428 So.2d 1
(Ala. 1982); Houston v. McClure, 425 So.2d 1114
(Ala. 1983).
Armstrong v. Life Ins. Co. of Virginia, 454 So.2d 1377, 1379
(Ala. 1984).
Neill's complaint is grounded upon Code 1975, § 6-5-101, which defines legal fraud:
 Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.
As we noted in Roney v. Ray, 436 So.2d 875, 877 (Ala. 1983):
 The essential elements of this tort are (1) a false representation (2) regarding a material existing fact (3) which the plaintiff relies upon (4) and is damaged by as a proximate result. Earnest v. Pritchett-Moore, Inc., 401 So.2d 752, 754 (Ala. 1981); International Resorts, Inc. v. Lambert, 350 So.2d 391, 394 (Ala. 1977).
We think that Neill's action fails because of the complete lack of credible evidence of the third element of this tort, namely, reliance.
Speaking to the element of reliance, this Court, in Marshallv. Crocker, 387 So.2d 176, 178, (Ala. 1980), quoting Jordan Sons v. Pickett, 78 Ala. 331 (1884), opined:
 The fraud, which entitles a purchaser of property to a right of action for deceit, ordinarily consists in the misrepresentation . . . of a material fact, on which he has a right to rely, and does rely, operating an inducement to the contract, and whereby he is deceived and injured. It is not indispensable that the misrepresentation . . . shall be the sole inducement; it is sufficient if it materially contributes, and is of such character that the purchaser would not have consummated the contract, had he known the falsity of the statement, or the fact suppressed. [Emphasis added.]
78 Ala. at 338.
Although Neill testified that the square footage of the house he purchased was important to him and that he relied upon the square footage notation in the multiple listing booklet, we find that this evidence is conclusively negated by Neill's own actions and words, as well as other evidence found in the record.
The record discloses that prior to signing the sales contract, Neill inspected the house on four or five occasions. He visited the house another four or five times prior to closing and was given a key which gave him unlimited access to the house.
In addition to making thorough inspections of the house, Neill actually measured several of the rooms. He measured the master bedroom because, he said, "the master bedroom didn't look as large as what it indicated in the book." Erwin accompanied Neill on his visits to the house and assisted Neill with the measurements.
Erwin testified that the two men measured the master bedroom and the garage and that they talked about the garage size in relation to total square footage. Furthermore, Erwin stated that he offered to check on the square footage with Leo and told Neill to satisfy himself as to the suitability of the house, including square footage. Erwin testified that Neill responded "No, I like the house. Let's go on with it."
Neill's own testimony negates any finding of reliance upon the listed square footage:
 Q. Now, what was so attractive about this house. . . .
 A. This house was much closer and the more I thought about living all the way down off Weatherly and having to travel the Parkway to work, the less I liked that idea.
 The other thing was the house down off Weatherly would have required spending several thousand dollars to get it in the shape so that I could have someone rent out the downstairs area. *Page 575 
 Q. You also, did you not, consider the Scenic property to be a better buy, overall?
A. Yes, sir.
 Q. Let's go to the things that you told Mr. Erwin about, the important things to you that you discussed with Mr. Erwin that were important to you when you bought this particular house, okay?
 You told him the price and location were good, that's two different things, you were interested in price and location?
A. Yes, sir.
. . . .
Q. The view, is that correct?
A. Yes.
 Q. The kitchen, you told him you liked the kitchen in that particular house, too, didn't you?
A. The kitchen was all right.
 Q. Well, in your deposition you told us the kitchen was okay, you liked it?
A. Yes, sir, okay.
. . . .
 Q. The garage, did you tell him that was sufficient to suit your needs?
A. Yes, sir.
 Q. What about the bedrooms? We discussed that, you told us those fit, those were okay; in fact, you measured them, is that correct?
A. Measured the one, yes.
 Q. And you went in the other ones and you looked at them, is that correct?
A. Yes, sir.
 Q. And there was a new roof on this house, that was important to you, wasn't it?
A. Yes, sir.
 Q. Also the brick and the siding, those were sufficient, those were in sufficient condition?
A. They were in acceptable shape.
 Q. All right. And you told us that the rental space available was very important; in fact, that's one of the things, one of your main criteria here in trying to find a house at that time, wasn't it?
A. Yes, sir.
. . . .
 Q. Now, the school district, you mentioned that was important, did you not?
A. Yes, sir.
 Q. The area of town, that was important, too, was it not . . .?
A. Yes, sir.
. . . .
 Q. You told him all of these things were important to you, and I won't go through them one by one, didn't you, please, sir?
A. Yes, sir.
 Q. But you didn't tell him square footage was important to you?
A. That was based on the price of the house.
Q. Can you answer my question?
A. No, sir.
 Q. You testified in your deposition, and you have also told us now, that square footage wasn't important to you at the time, isn't that correct?
A. I did not tell Stan Erwin that that was important.
 Q. Isn't it correct you didn't tell your friend, you didn't tell your wife-to-be, you didn't tell anybody that square footage was important to you at the time; isn't that correct; isn't that what you told us?
A. Yes, sir.
. . . .
 Q. All right, sir. Then, the question further: "Did you ever tell Stanley that this was an important criterion for you, dollars per square foot, on this particular house in those words, or those words in substance"?
A. Answer, "No."
 Q. Question: "Did you ever in any way let it be known to him or any agent of Leo Agency that dollars per square foot on this house were an important criterion or the important criterion?" What is your answer there?
A. "No."
We think that this evidence compels no other finding but that Neill did not rely upon the figures in the multiple listing booklet, but, rather, relied upon his own *Page 576 
meticulous inspection of the property to satisfy any reservations he may have entertained. There is no evidence that had Neill known of the area discrepancy prior to the purchase that he would not have consummated the deal, but the evidence does establish that his purchase was motivated by a multitude of other factors.
Even if reliance by Neill could be supported by the record before us, such reliance would not be justified under these facts.
 Although a plaintiff alleged to have been injured by a defendant's misrepresentation must have in fact acted upon it to his injury believing it to be true to maintain his action for fraud against the defendant, if he had prior knowledge of its falsity or if the circumstances surrounding the pronouncement of same would have aroused suspicion as to its validity in the mind of a reasonable person, he cannot be said to have reasonably relied upon the misrepresentation and, therefore, cannot obtain damages or other relief from defendant. See Shahan v. Brown, 167 Ala. 534, 52 So. 737 (1910); Mid-State Homes, Inc. v. Holt, 52 Ala. App. 415, 293 So.2d 476
(1974).
Cook v. Brown, 393 So.2d 1016, 1019 (Ala.Civ.App. 1981). Moreover, in Marshall, supra, we reiterated:
 "When the means and sources are equally accessible to both parties, the ignorance of the purchaser is regarded as self-deception, unless art or artifice is employed to prevent investigation, or stifle information."
387 So.2d at 179, quoting Jordan Sons v. Pickett, supra.
Although the fraud in Marshall was that of concealment of a material fact, we find the principle espoused therein equally applicable to the fraudulent misrepresentation alleged in the present case. Following this same premise, the court inMarshall v. Keaveny, 38 N.C. App. 644, 650, 248 S.E.2d 750, 754
(1978), a case factually close in point to the instant case, held:
 The plaintiff here did not rely upon the representations of Hannon or any other representations to such extent as to forgo making his own investigation of the interior of the house which he proposed to purchase. It must be assumed that he possessed the necessary skills to make any measurements which he deemed material during the course of his investigation. There is no indication from the record on appeal that the plaintiff was any less able to make a determination as to square footage than Hannon or that any representation was made to him which caused him to reasonably forgo measuring the house and computing its square footage if he felt it was a material matter.
Neill was given every opportunity to inspect and measure the house. His access was unlimited. He inspected the house on numerous occasions and measured at least a portion of the house because he was suspicious about the square footage listing. In addition, Neill was learned in real estate transactions, having previously purchased residential rental property. We think these facts, considered with those previously set out, preclude a case of actionable fraud.
For all of the foregoing reasons, we reverse the judgment of the Court of Civil Appeals and remand the cause to that court.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON and BEATTY, JJ., concur.
TORBERT, C.J., recused.
SHORES and EMBRY, JJ., not sitting. *Page 577