Donnie and Letha Lisenby sued Commercial Credit Corporation and its employee, Jackie Scott; Brett Real Estate, Robinson Development Company, Inc. (hereinafter together "Brett Robinson"), and its employee, Beth Ann Pierce, alleging fraud and negligence in the sale of used residential real property. The trial court entered a summary judgment in favor of all defendants except Commercial Credit and Jackie Scott. The case went to trial and the jury returned a verdict for $35,000 in favor of the Lisenbys and against Commercial Credit and Jackie Scott. Commercial Credit and Jackie Scott appeal. The Lisenbys also appeal the summary judgment in favor of defendants Brett Robinson and Beth Ann Pierce, and the trial court's order dismissing counts 2, 5, and 6 of the original complaint. We reverse the judgment against Commercial Credit and Scott, and affirm the trial court's order dismissing counts 2, 5, and 6, and its summary judgment in favor of Brett Robinson and Beth Ann Pierce.
The parties do not dispute the facts. On September 17, 1984, Edna I. Gilley transferred title to her residence at 2714 Ralston Road in Mobile, Alabama, to Commercial Credit Corporation in lieu of foreclosure. Jackie Scott, branch manager of Commercial Credit, which then owned the property, made an inspection of the house and had some painting done and carpet replaced before listing the property, in October 1984, with Brenda Ray of Roberts Brothers, a realty company.
Shortly after Commercial Credit acquired the property, Jackie Scott talked to Lonnie Owen, who lived next door to the property. Owen, a retired employee of a floor covering company, told Scott that a new roof had been put on the house following Hurricane Frederic in 1979. He said flashing on the roof had been incorrectly installed and that this had allowed water to seep into and down the wall and collect in the carpet. Owen said he had helped the previous owner, Mrs. Gilley, dry out the carpet. Owen told Scott that he thought it would cost $500 to install gutters and eaves, and that this, in his opinion, would stop the rain from entering the wall.
In 1985, Charles G. Bitzer, Jr., made an offer to purchase the house. As a condition *Page 1293 
for sale, Bitzer required that Commercial Credit make a complete structural inspection and repair roof leaks in the back bedroom and front bedroom closet. Commercial Credit hired Floyd Rhodes, a roofer, to make repairs in the roof and to stop leaks noted in the inspection. Rhodes repaired leaks existing around the chimney and could find no leaks near the west wall. His work was completed in August 1985. Because of other difficulties not related to the issues in this case, Bitzer failed to close the deal.
In November 1985, Commercial Credit changed real estate companies and listed the house with Barbara Mitchell of Pope, Quint and Trusty. In March 1986, Mitchell obtained from a Ms. Boykin an offer to purchase the property. An FHA inspection made pursuant to the Boykin offer revealed rotten wood in the west side of the house and sheet rock damage on the west wall caused by a leak in the roof. Commercial Credit made the repairs suggested by the FHA. Jackie Scott hired Bob May to make those repairs. May's repairs included replacing a four-foot by eight-foot section of the west wall, replacing sections of floor joists, molding, floor sills, outside plasterboard and a four-foot by eight-foot section of the floor in the den, as well as outside trim around the windows and doors. The cost of May's repairs totalled $1,265. After these repairs were made, Boykin did not go through with the offer, due to her inability to obtain financing.
Commercial Credit again changed real estate companies and listed the home with Brett Robinson; Beth Pierce was Brett Robinson's agent. Letha Lisenby noticed the house while driving in the neighborhood in November 1986. She stopped and was shown the house by an unidentified man from Brett Robinson. Lisenby liked the house upon her initial tour and stopped looking at other houses on the market. She and her husband, Donnie Lisenby, hired Joanne Shreeves, an agent with Hamilton-Graddick Realty, to represent and advise them in connection with the purchase of the property. Shreeves took them on two or three more tours through the house. On November 25, 1986, the Lisenbys submitted to Commercial Credit a written offer to purchase the house. Prior to this offer, the Lisenbys had not had any conversations with Jackie Scott, nor with her boss, Ed Baxley, or anyone else from Commercial Credit.
The Lisenby offer required Commercial Credit to make all FHA inspection-required repairs, which it agreed to do on December 3, 1986, when it accepted the Lisenbys' offer. The FHA inspection cited several defects, including deficiencies in the plumbing, the electrical and heating and cooling systems, and kitchen equipment. The FHA inspection did not mention any problems related to any water leak or rot. Commercial Credit made the repairs according to the FHA inspection.
According to the Lisenbys' FHA inspection, Commercial Credit was required to provide an adequate heating system for the house. At the Lisenbys' request, Commercial Credit permitted Mrs. Lisenby's father, an air conditioning contractor, to install a central heating and air conditioning system. Jackie Scott first met the Lisenbys when she provided them with a key to the house so that the heating and cooling systems could be installed. While performing the work, Lisenby's father had occasion to look in the attic and under the house, where the system was installed. He was required to run floor vents to within six inches of the outside wall of the house, and he saw no rot in the area but did note some discoloration caused by water, which he did not believe was unusual. While working on the house and staying with his daughter, he never indicated to the Lisenbys that he saw anything wrong with the house.
During the week in which the heating and cooling systems were being installed, Lisenby inquired about a missing shingle on the west wall; the absence of the shingle revealed rot and wet wood. Present at this time were the Lisenbys; Joanne Shreeves, realtor for the Lisenbys; and Commercial Credit's representative, Ed Baxley. Either Shreeves or Baxley responded to the Lisenbys' inquiry about the shingle and rot by stating that the moisture was caused by condensation from a *Page 1294 
window unit air conditioner that was installed above the affected area. The Lisenbys accepted that explanation and there was no further mention of the topic.
At closing, the Lisenbys signed a document stating that they had "inspected the property and accept it in its present condition. . . . Brett Real Estate, Robinson Development Co., Inc., and Commercial Credit Corp. have fulfilled their obligation to us."
In February 1987, one month after closing, during a thunderstorm the Lisenbys noticed water seeping down the windows, the walls in the den, and the wall of the bedroom on the west side of the house. The Lisenbys hired Donald Cieutat, an electrical engineer and construction contractor, to inspect and repair various problems in the house. Cieutat discovered rot in three places in the perimeter sills (the large supports that run horizontally under the exterior walls of the house): under the west wall, under the north wall, and under the east wall. He also discovered rot where the air conditioner unit had been on the west wall. The repairs he made cost the Lisenbys $15,338.40.
The complaint against Commercial Credit Corporation, Jackie Scott, Brett Robinson, and Beth Ann Pierce, charged the defendants with fraudulent concealment and suppression of material facts that presented a dangerous condition in the house. The complaint also alleged willful intent to deceive and mislead the plaintiffs and negligent failure to disclose the defects in the house. The plaintiffs based their claim of liability upon the theory that the defendants had owed the plaintiffs a duty to disclose defects that they had, or should have had, knowledge of.
Ordinarily, sellers of used residential property have no duty to disclose any defect to a purchaser. Boswell v. Coker,519 So.2d 493 (Ala. 1987). There are exceptions to this rule. Under § 6-5-102, Ala. Code 1975, the seller has a duty to disclose defects to a buyer if a fiduciary relationship exists between the parties. In addition, if the buyer specifically inquires about a material condition concerning the property, the seller has an obligation to disclose known defects. Whether reliance on the statements is justifiable is an issue that should be submitted to the jury for its determination. Hickox v. Stover,551 So.2d 259 (Ala. 1989). See also Fennell Realty Co. v.Martin, 529 So.2d 1003 (Ala. 1988).
In the present case, neither Commercial Credit nor Scott had a duty to disclose the latent defect in the house to the Lisenbys. There was no fiduciary duty between the parties. The Lisenbys had also hired Joanne Shreeves, a real estate agent, to represent them in the transaction.
Commercial Credit and Scott did not owe the Lisenbys any duty to disclose a latent defect of which they were unaware. There was no evidence they had any knowledge of the condition of the wall or of the roof beyond what an inspection would reveal. In fact, after both the Bitzer and Boykin offers were made, FHA inspectors did not find the defect and Commercial Credit hired repairmen to complete the FHA-requested repairs. Knowledge of previous problems and repair of earlier difficulties does not impute or constitute knowledge of present problems.Speigner v. Howard, 502 So.2d 367 (Ala. 1987).
Once the repairs had been made pursuant to the FHA inspections, Commercial Credit and Scott had no way to discover new problems. Since they had obtained ownership in 1985, the house had been unoccupied. Had the roof and wall problems been noticeable through inspection, Mrs. Lisenby's father could have possibly discovered them while he was installing the heating and cooling system under the house.
Under these undisputed facts, the law did not impose a duty on Commercial Credit or Scott to disclose a defect that they did not know existed in the house; therefore, the trial court erred when it denied their motion for directed verdict and again when it denied their motion for j.n.o.v.
The trial court correctly entered the summary judgment for Beth Pierce and Brett Robinson. There is no evidence that these defendants had knowledge of any kind that the house had a latent defect. *Page 1295 
Nor is there any evidence that these defendants made any representation to the plaintiffs of any kind. They were the agents with whom the property was listed when the Lisenbys made their offer. There is no evidence that the Lisenbys relied upon any statement by these defendants. The trial court correctly entered summary judgment in favor of these defendants.
We observe that if the Lisenbys relied upon any realtor it was Joanne Shreeves, who was hired to represent and advise them in the purchase of this property. They did not sue her.
The Lisenbys on cross-appeal argue that the trial court erred when it granted the motion of defendants Scott and Commercial Credit to dismiss counts 2, 5, and 6 of the Lisenby complaint; those counts alleged fraud by recklessness and mistake. From the evidence previously discussed, we conclude that these counts were properly dismissed by the trial court because there was no evidence that these defendants knew of any defects. Even if these defendants had knowledge of the defects, under these facts they still would not have had a duty to disclose anything to the Lisenbys.
Therefore, we reverse the judgment against Commercial Credit and Jackie Scott and render a judgment in their favor, and we affirm the dismissal of plaintiffs' counts 2, 5, and 6.
89-1228, REVERSED AND JUDGMENT RENDERED.
89-1292, AFFIRMED (as to the dismissal of counts 2, 5, and 6).
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.