The buyers of a used house, after the roof of the house developed leaks and the furnace system was condemned by the local utility company, sued the realty company, its agent, and the sellers, alleging: (1) that they had been fraudulently induced to buy the house because of misrepresentations by the defendants; (2) that they had been defrauded by suppression of material facts that the defendants were under a duty, under the circumstances, to disclose; and (3) that the sellers had breached their contract.
The trial court entered a summary judgment for the sellers on the buyers' breach of contract claim and permitted the fraud claims to be tried before a jury. At the close of the plaintiffs' case, the defendants made a motion for a directed verdict, which the trial court granted. The legal issues are: (1) whether the trial court erred in directing a verdict in favor of realty company and its agent on the buyers' claims of fraud in the inducement by misrepresentation and suppression; and (2) whether the trial court erred in entering a summary judgment in favor of the sellers on the buyers' claim of breach of contract.
 Facts
In July 1989, Charles and Patricia Cato, husband and wife, were driving through a Montgomery neighborhood when they noticed a Lowder Realty Company sign advertising an open house at the property located at 3597 Southmont Drive. The Catos stopped, and Gerald Phillips, a Lowder Realty agent, showed them the house. The Catos, who had never purchased a house before, began negotiating with Phillips. Phillips told them that the house had been appraised at $61,000 and that $55,000 would be a reasonable offer. The Catos subsequently made an offer of $55,000, and the sellers, Thomas and Vivian Zenner, accepted it. Phillips provided the Catos with a contract and asked them to read and sign it.
There was a conflict in the evidence relating to the events that surrounded the execution of the contract. There was particular disagreement concerning the parties' discussions about the responsibilities of the buyers to inspect the house. Paragraph 18 of the contract states:
 "Buyer has inspected the premises and accepts them 'as is' with the exception of the heating/air conditioner, plumbing, built in appliances, roof, mechanical systems, and electrical systems which the purchaser has the right to inspect through himself or his designated agent at his expense prior to closing. Failure to so inspect constitutes acceptance of same." *Page 380 
Patricia Cato contends that paragraph 18 raised questions in her mind and that she asked Phillips if he would recommend someone to inspect the house. The Catos contend that Phillips told them that because they were applying for a loan guarantee through the Veterans Administration, the VA wouldinspect the house before guaranteeing a loan. The Catos testified that Phillips, in addition to making the statement about the VA inspecting the house, mentioned that the contract provided for a Lowder Realty "home warranty" that would serve as a "back-up warranty" should anything go wrong. Phillips testified at trial that Patricia Cato asked him how much a home inspection would cost, and that when he told the Catos that it would cost approximately $175 to have the house inspected, the Catos told him that they could not afford to pay for an inspection. Phillips further testified that he told the Catos that the VA would appraise the house and that the VA appraiser would then find any defects in the house.
The VA appraiser, George E. Jordan, testified that he had appraised the house in February 1989 in connection with a previous contract that was not consummated, and that at the time of his appraisal the house met VA standards. The only problem the VA appraiser noted pertaining to the Catos' purchase of the house was some peeling paint, which was repaired before the Catos closed on the house. In his appraisal, Jordan noted that the condition of the roof and the heating system was "average."
Before the closing, the mortgage company that was to provide financing for the Catos reviewed the Catos' application, and pursuant to that review notified the Catos that their loan would probably not be approved unless they were able to pay the balance of approximately $1,000 on a loan secured by one of their motor vehicles. The Catos had asked that the Zenners make repairs on a portion of the roof, which were estimated to cost about $950, and the parties worked out an arrangement whereby the Zenners and Phillips would pay off the debt secured by the Catos' truck in lieu of doing any roof repair.
The sale was completed in August 1989 and after the closing the Catos, the Zenners, and Phillips walked through the house to make sure there were no problems. The walk-through inspection revealed no substantial defects, and the Catos moved into the house on September 1, 1989. In February 1990, the service to the gas furnace was interrupted; the Catos telephoned the gas service company to ask it to light the pilot light in the furnace. The company's serviceman told the Catos that the furnace had been improperly installed and that it might be dangerous. The next day, the serviceman returned with his supervisor, who "red tagged" the furnace and instructed the Catos not to use it. The Catos contacted the home warranty company that provided coverage pursuant to the Lowder Realty home warranty, but the warranty company denied the Catos' claim after concluding that the problem with the furnace was preexisting and therefore was not covered by the warranty agreement.
At about this same time, the ceiling in the living room began to leak. Phillips and Lowder Realty contend that the leak was due to a severe storm that damaged the roof. Phillips and Lowder Realty contend that since the storm the Catos have done nothing to mitigate the damage caused by the leaking roof, and that the Catos failed to use insurance proceeds sent to them for this purpose to make any repairs. The defendants contend that this failure to mitigate has caused substantial damage to the house over the past several years. On the other hand, the Catos argue that the only evidence to support the defendants' claim that the roof was damaged by severe weather was a Weather Service report indicating that on a particular date some areas of Montgomery were hit by heavy rain and strong winds, but not indicating which areas.
The Catos sued Lowder Realty and its agent Gerald Phillips in 1991, alleging that Lowder Realty and Phillips had fraudulently induced them to purchase the house and that Lowder Realty and Phillips had suppressed certain facts and had misrepresented other facts to the Catos, and that the Catos had justifiably relied upon these misrepresentations and failures to disclose in deciding to purchase their house. By amended complaint, *Page 381 
the Catos also sued the Zenners, alleging breach of contract. Thomas and Vivian Zenner had lived in the house from 1950 until they sold it to the Catos in 1989. The Zenners testified by an affidavit that they had never met the Catos until the day of closing and that they never mentioned to the Catos that there were any problems with the furnace because they had never had a problem with the furnace. There was no evidence presented that the Catos had ever inspected the house before the closing. There was evidence that the Catos were satisfied with the house when they walked through it after the closing. Apparently, the trial court believed that the alleged problems with the roof did not amount to a breach of contract by the Zenners. In addition, concluding that the Catos and the Zenners had reached a settlement as to the condition of the roof, the court subsequently granted the Zenners' motion for a summary judgment on the Catos' contract claim. The case against Lowder Realty and Phillips proceeded to trial, and, at the conclusion of all the evidence, the trial court directed a verdict for Lowder Realty and Phillips. The Catos appeal as to the rulings for all the defendants. We must decide whether the Catos presented substantial evidence that any of the defendants fraudulently induced the purchase by misrepresentation or suppression, or breached the contract.
 Standards of Review
A motion for a directed verdict is a procedural device by which one party tests the sufficiency of the other party's evidence. See, Rule 50(a), Ala.R.Civ.P.; Alabama Power Co. v.Williams, 570 So.2d 589 (Ala. 1990); John R. Cowley Bros.,Inc. v. Brown, 569 So.2d 375, 376 (Ala. 1990); J. Hoffman S. Guin, Alabama Civil Procedure § 8.37 (1990). The ultimate question, of course, is whether the nonmovant has presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution. Hoffman Guin, supra, at § 8.37.
The standard of review applicable to a motion for a directed verdict is the "substantial evidence rule." See § 12-21-12(a), Ala. Code 1975; Koch v. State Farm Fire Cas. Co.,565 So.2d 226, 228 (Ala. 1990). That is, the court must determine whether the nonmovants presented "substantial evidence" supporting each element of their cause of action; if not, the motion is to be granted.
"Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, §12-21-12. This calls for "a purely objective determination of whether the party having the burden of proof has produced [sufficient] evidence [of a factual dispute] requiring resolution by the jury." Ex parte Oliver, 532 So.2d 627, 628
(Ala. 1988); John R. Cowley Bros., supra. In reviewing a ruling on a motion for a directed verdict, this Court views all the evidence in a light most favorable to the nonmovant and entertains such reasonable evidentiary inferences as the jury would be free to draw. Williams v. Allstate Ins. Co.,591 So.2d 38 (Ala. 1991). I
First, we address the issue of fraud in the inducement by misrepresentation. A cause of action for fraud by misrepresentation is authorized by § 6-5-100 et seq., Ala. Code 1975. To sustain a cause of action under § 6-5-100, a party must allege and prove the following elements:
 " ' "(a) [A] false representation [usually] concerning an existing material fact . . .;
 " ' "(b) representation which (1) the defendant knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling plaintiff that defendant had knowledge that the representation was true while not having such knowledge [citation omitted];
 " ' "(c) reliance by the plaintiff on the representation and that he was deceived by it [citation omitted];
 " ' "(d) reliance which was justified under the circumstances [citation omitted]; *Page 382 
 " ' "(e) damage to the plaintiff proximately resulting from his reliance [citation omitted]." ' "
Patel v. Hanna, 525 So.2d 1359 (Ala. 1988) (quoting earlier cases). This court has stated:
 "Whether a given representation is an expression of opinion or a statement of fact depends upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties. The mere form of the representation as one of opinion or fact is not in itself conclusive, and in cases of doubt the question should be left to the jury.
 "Whenever a person states a matter which might otherwise be only an opinion, not as a mere expression of his own opinion but as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, the statement clearly becomes a statement of fact."
Fidelity Casualty Co. of New York v. J.D. Pittman TractorCo., 244 Ala. 354, 358, 13 So.2d 669, 672 (1943) (citations omitted). As stated in Jordan Sons v. Pickett, 78 Ala. 331,338 (1884):
 "The fraud, which entitles a purchaser of property to a right of action for deceit, ordinarily consists in the misrepresentation or concealment of a material fact, on which he has a right to rely, and does rely, operating an inducement to the contract, and whereby he is deceived and injured."
Quoted with approval in Marshall v. Crocker, 387 So.2d 176, 178
(Ala. 1980). Neither Lowder Realty nor Phillips owed a duty to the Catos to disclose a latent defect of which they were unaware. There was no evidence that they had any knowledge of the condition of the roof or of the furnace beyond what an inspection would reveal. The evidence shows that the VA appraiser found the roof and the heating system to be of an "average" condition and that the Catos were given an opportunity to inspect the house. The contract specified that failure to inspect constituted acceptance of the house "as is." Given these facts, the law did not impose a duty on Lowder Realty or Phillips to disclose defects in the roof and the furnace; therefore, the trial court correctly directed a verdict for Lowder Realty and Phillips on the Catos' claim of fraud in the inducement by misrepresentation.
 II
Next, we turn to the Catos' claim that the trial court erred in directing a verdict in favor of the defendants on their claim alleging fraud by suppression. This Court has stated:
 "For active concealment to be recoverable, the facts suppressed must not only be material, but either the materiality must be known to the seller, or the facts must so constitute an element of the value of the contract as to authorize the inference of knowledge of its materiality, and the concealment must be for the purpose of continuing a false impression or a delusion under which a purchaser has fallen, or suppressing inquiry and thereby effecting a sale with the intention to conceal or suppress. . . ."
Speigner v. Howard, 502 So.2d 367, 371 (Ala. 1987). Ordinarily, sellers of used residential property have no duty to disclose any defect to a purchaser. Boswell v. Coker, 519 So.2d 493
(Ala. 1987). However, § 6-5-102, Ala. Code 1975, provides for exceptions to this rule. The seller generally has a duty to disclose defects to a buyer only if a fiduciary relationship exists between the parties or if the buyer specifically inquires about a material condition concerning the property, in which case the seller has an obligation to disclose known defects. Commercial Credit Corp. v. Lisenby, 579 So.2d 1291
(Ala. 1991).
Although this Court has abrogated the rule of caveat emptor
in the sale by a builder-vendor of a newly constructed house,Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971), this Court has continued to hold that there is no implied warranty of habitability in the sale of used residential real estate, and the rule of caveat emptor still applies in such a sale. Rayv. Montgomery, 399 So.2d 230 (Ala. 1980). Ala. Code 1975, §6-5-102, states:
 "Suppression of a material fact which the party is under an obligation to communicate *Page 383 
constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
Thus, to prove fraudulent suppression, a plaintiff must show (1) a duty to disclose the facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act, and (4) action by the plaintiff to his injury. Wilson v. Brown, 496 So.2d 756, 759
(Ala. 1986). "Silence is not actionable fraud absent a confidential relationship or some special circumstances imposing a duty to disclose." Wilson, 496 So.2d at 759; Cooper Co. v. Bryant, 440 So.2d 1016 (Ala. 1983).
In Fennell Realty Co. v. Martin, 529 So.2d 1003 (Ala. 1988), this Court stated:
 "Although Alabama retains the caveat emptor rule with regard to the resale of used residential real estate (Ray v. Montgomery, 399 So.2d 230
(Ala. 1980)), it is not applicable, under certain circumstances, when the purchaser of a used house inquires directly (either of the seller or of the seller's agent), prior to closing, about a material defect or condition of the home. If the agent is questioned directly, and the agent assumes the obligation to inspect the house for the defects inquired about and to disclose his findings to the buyer, the law imposes on the agent the duty of truthful disclosure of all material facts revealed by the inspection. [Citations omitted.]
 "Moreover, if the agent (whether of the buyer or of the seller) has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent is under a duty to disclose the defect and is liable for damages caused by nondisclosure. This duty is also placed on the seller. See Cashion v. Ahmadi, 345 So.2d 268, 270
(Ala. 1977)."
529 So.2d at 1005. See also, Harrell v. Dodson, 398 So.2d 272
(Ala. 1981).
" '[W]here one responds to an inquiry, it is his duty to impart correct information, and he is guilty of fraud if he denies all knowledge of a fact which he knows to exist, or if he gives equivocal, evasive, or misleading answers calculated to convey a false impression, even though literally true as far as they go, or if he fails to disclose the whole truth.' "Boswell v. Coker, 519 So.2d 493 (Ala. 1987). Although the Catos alleged that they told Phillips that they had never purchased a home before, they presented no evidence that they specifically inquired about the condition of the furnace or that the defendants suppressed the truth in violation of a duty to disclose. Based on these facts and circumstances, the trial court properly held that there was no showing that the defendants suppressed information relating to a material fact.
In his affidavit, George E. Jordan, the VA real estate appraiser, stated:
 "It is not the responsibility nor duty of a Veterans' Administration appraiser to make a detailed inspection of such things as the heating, plumbing and electrical conditions of the house. Home Inspection Service companies are available for this purpose. A Veterans' Administration real estate appraiser is responsible for determining the reasonable value of the property. . . . The Veterans' Administration does not warrant the condition or value of any home. The purchasers acknowledged this fact on August 30, 1989 on VA Form 1820. The only purpose for a VA appraisal is to determine the property's acceptability for the VA loan guaranty program. . . . I had no duty to perform a detailed inspection, nor did I undertake to do a detailed inspection of the heating, plumbing, electrical wiring system, or other items listed in the Plaintiffs' complaint."
The Catos contend that Phillips told them that because they were applying for a loan guarantee through the VA, that the VA would inspect the house. The Catos testified that Phillips also said that the contract provided a Lowder Realty home warranty that would serve as a "back-up warranty" should anything go wrong. However, in addition to paragraph 18 of the sales contract, cited previously, another provision of the sales contract, which the Catos signed, states, "I am aware that neither HUD, FHA nor VA warrants the condition or value of the property." *Page 384 
The trial court directed verdicts for Lowder Realty and Phillips on the basis of this Court's decision in Harrell v.Dodson, 398 So.2d 272 (Ala. 1981). In Harrell, the purchasers of a house sued the sellers, the real estate agency, and the real estate agent, alleging misrepresentation in the sale of the house. The purchasers testified that the agent told them "that if the property passed the VA appraisal, it would be basically sound . . . and we would not have to worry." The trial court directed a verdict in favor of the defendants, and the purchasers appealed from the judgment based on that directed verdict. This Court affirmed, holding that the statements were not representations of material fact but statements of opinion, and that the evidence was insufficient to support an inference that the defendants knew that the house had structural problems and fraudulently concealed those problems from the purchasers. We agree with the trial court that Harrell v. Dodson is applicable to the facts of this case, and, consequently, we hold that the trial court properly directed a verdict in favor of the defendants on the Catos' claim of fraud by suppression.
 III
Finally, we turn to the issue of breach of contract. By the contract the Zenners promised that the roof and the heating and air conditioning, plumbing, mechanical, and electrical systems would be in normal working order at the time of the closing of the sale. In their answer, the Zenners denied that the heating and air conditioning, plumbing, mechanical, and electrical systems were not in normal working order at the time of the closing, and they stated that they and the Catos had reached a settlement agreement regarding the condition of the roof.
The Catos contend that the heating and air conditioning system and the roof were not in normal working condition at the time of the sale and that this amounted to a breach of the contract. Based upon the Zenners' affidavit and paragraph 18 of the contract, and pursuant to Rule 56, Ala.R.Civ.P., the trial court granted the Zenners' motion for a summary judgment. The contract provided "that the Catos had the right to inspect the systems and that the failure to inspect constituted acceptance of the same." The difficulties encountered by the Catos did not occur until several months after the sale was closed. The Catos testified that they knew that if they failed to inspect the systems, they accepted them "as is." Based upon this testimony and the rules of law found in Harrell v. Dodson, we conclude that the trial court correctly entered the Zenners' summary judgment.
Accordingly, the summary judgment and the judgment based on the directed verdict are due to be affirmed.
AFFIRMED.
SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.