THOMPSON, Judge.
This action for fraudulent misrepresentation, breach of contract, and negligent inspection was originally assigned to a former judge on the court, and recently was reassigned.
On January 21,1993, the Griffins, husband and wife, purchased a home in Moulton. In connection with that sale, a termite inspection was performed; it revealed weather rot on the floor joist above the crawl space. The Griffins lived in the house until the summer of that year, when they decided to return to their home in Athens.
On the weekend of July 4, 1993, James Bennett and his wife Diana Bennett visited the Griffins’ home as prospective purchasers. Although the Bennetts were represented by a real estate agent, the agent did not accompany them on their first visit to the Griffin’s house. The Bennetts inspected the house for about two hours on this first visit and discussed the purchase of the house with Mr. Griffin. Mr. Griffin reported to them that the ceiling fans did not work and that there was a hole in the central vacuum hose. When the Bennetts asked him if there was anything else he knew about the house that they should know, Mr. Griffin replied “No.”
The Bennetts signed and presented a sales contract on July 6,1993, which contained the following language:
*1123 “13. COMPLETE AGREEMENT: The Seller and Buyer hereby acknowledge and confirm that this contract states the entire agreement between the parties and there has been no representations, covenants, statements or warranties, unless expressly stated herein made to the buyer or seller or any person whomever. Buyer and Seller have entered into this agreement based upon their own inspection and personal knowledge of the property and any financing arrangements concerning said property and neither party has relied upon any representations or statements of any person whomever unless said representations or statements are expressly written herein.
[[Image here]]
“15. THIS IS A LEGAL INSTRUMENT. IF NOT UNDERSTOOD, LEGAL, TAX OR OTHER COUNSEL SHOULD BE CONSULTED BEFORE SIGNING.”
The Griffins accepted the sales contract with no changes.
Mr. Bennett testified at trial that when he signed the contract he understood that it was contingent upon the mortgage company’s doing inspections on the house. On August 27, 1993, Cell-Pest Control, Inc. (“Cell-Pest”), was hired to perform an inspection of the home and provide a clearance letter stating that the home was free of visible signs of active or previous infestations of wood-destroying organisms. This letter was required by the Veterans Administration in order for the Bennetts to qualify for a VA loan.
The sale of the house was consummated at a closing that took place on August 31, 1993. At closing, the Griffins produced the “Official Alabama Infestation Inspection Report” completed by Cell-Pest, which stated that the house was free of visible evidence of active or previous infestation of wood-destroying organisms. After moving into the house, the Bennetts discovered water damage to a wall and to some of the subflooring and floor joists. An estimate from a contractor for repair of this damage was approximately $30,400.
Ten months later, the Bennetts sued the Griffins, alleging that the Griffins had made a material misrepresentation regarding the structural soundness of the house. In addition, the Bennetts sued Cell-Pest, claiming to be third party beneficiaries of a contract between the Griffins and Cell-Pest, alleging breach of contract, claiming that Cell-Pest had performed a negligent inspection of the house. Following complete discovery, the judge entered a summary judgment in favor of Cell-Pest and the Griffins.
The Bennetts appeal, making the following arguments: (1) that the summary judgment was improper as to the misrepresentation claim against the Griffins because the Ben-netts say they produced documentary evidence that the Griffins had knowledge of the floor rot and failed to reveal this fact to, the Bennetts when the Bennetts inquired if there was anything further that they should know about the house; and (2) that the summary judgment was improper on the claims of misrepresentation and negligence against Cell-Pest, where Cell-Pest produced a clearance letter stating that the house had no active or previous signs of wood-decaying fungus and the Bennetts say they relied on these representations and purchased the house and discovered damage caused by wood-destroying organisms shortly after the real estate closing.
We affirm the summary judgment as to the claims against the Griffins. The Ben-netts failed to establish a claim of misrepresentation against the Griffins. The doctrine of “caveat emptor” applies to the sale of a used residence. Ray v. Montgomery, 399 So.2d 230, 233 (Ala.1980). Our Supreme Court stated that this doctrine did not apply under circumstances when the purchaser of a used house inquires directly of the seller or the seller’s agent, prior to the closing, about a material defect or condition of the home. Cato v. Lowder Realty Co., 630 So.2d 378, 383 (Ala.1993) (citing Fennell Realty Co. v. Martin, 529 So.2d 1003, 1005 (Ala.1988)). The Cato court explained that if the seller or his agent was asked about a specific defect and assumed the obligation to conduct an investigation to obtain an answer to the defect inquired about, and disclosed this answer to the buyer, the law imposed on him a duty *1124 to truthfully disclose all material facts revealed by the investigation. Id. In addition, if the seller or agent has knowledge of a material defect that would affect health or safety, and the defect is not readily observable by the purchaser, the law imposes a duty to disclose the defect. Id.
The undisputed evidence in the record was that the Bennetts questioned the Griffins as to whether there was anything the Bennetts should know about the house and Mr. Griffin replied “No.” The question posed by the Bennetts was far too vague to bring this case within the “direct inquiry of a specific defect” exception to the general rule of “caveat emptor.”
In a ease where the purchasers asked the sellers if there were any problems with the house and the seller replied no, our Supreme Court affirmed a summary judgment in favor of the defendant, holding that such a statement constituted an expression of an opinion, not a representation of fact. Cornelius v. Austin, 542 So.2d 1220, 1223 (Ala.1989).
In their brief the Bennetts alleged that the Griffins had undertaken to repair rotten sub-flooring and their brief cites specific pages of the record; however a careful reading of the pages cited reveals no such evidence of an undertaking. Furthermore, the record contains no evidence that the Griffins had any knowledge that the house was structurally unsound.
A review of the record shows that the only evidence indicating that the Griffins were aware of any defect at all in their home was a clearance letter from the termite company that had inspected their home prior to their purchase, which noted “weather rot found on floor joist above the crawl hole.” This type of defect does not constitute evidence of structural unsoundness and does not qualify as a latent defect. The Griffins had every opportunity to inspect the crawl hole or to enter and inspect the entire crawl space.
In addition, we note that the Bennetts rely heavily on Rumford v. Valley Pest Control, Inc., 629 So.2d 623 (Ala.1993), a case reversing a summary judgment in a residential sales case. Rumford is not applicable here, because it concerns claims of fraudulent suppression, concealment, and fraud. The only claim the Bennetts have made against the Griffins is misrepresentation. The doctrine of caveat emptor clearly applies here, and it bars the claim of misrepresentation against the Griffins.
The Bennetts further claim that the trial court erred in entering the summary judgment in favor of Cell-Pest on the Bennett’s claims of breach of contract, misrepresentation, and negligent inspection. We agree.
The Bennetts’ complaint, as amended, alleges that they were third-party beneficiaries of a contract entered into between Cell-Pest and the Griffins, and that Cell-Pest breached that contract by failing to inspect, or by negligently inspecting, the premises and failing to render an accurate report. The Official Alabama Wood Infestation Inspection Report completed by Cell-Pest contained the following language:

‘‘SCOPE OF INSPECTION

“An inspection of the structure(s) listed below was/were performed by a qualified inspector employed by this firm to determine the presence or previous presence of an infestation of the listed organisms and is not intended to be a report of damage. If visible evidence of previous infestation of listed organisms is reported, it should be assumed that some degree of damage is present. Evaluation of any corrective action should be performed by a qualified inspector approved by the purchaser. This report is subject to all conditions on the reverse side and is issued without warranty, guarantee or representation, except as provided in Rule No. 80-10-9-.18, ALABAMA ADMINISTRATIVE CODE, or subject to any treatment guarantee specified below.

“CONDITIONS GOVERNING THIS REPORT

“This report is limited to the five organisms listed.
“This report covers only those structures listed on front.
*1125 “Inspection, including sounding and/or probing, was performed in only those areas which were accessible. Inaccessible areas not inspected include, but are not limited to areas obstructed by, either floor coverings, wall coverings, siding, fixed ceilings, insulation, furniture, appliances or other personal items.
“Reporting of Wood Destroying Fungi on this report is intended to cover only infestations which occur below the first floor level and which result from moisture conditions which can be corrected through application of moisture barriers and/or increased ventilation and is not intended to cover conditions resulting from either roof or plumbing leaks, or improper drainage of surface water.
“The term Wood Boring Beetles, as used on the reverse side, means only those beetles which are known to establish and maintain a continuing infestation in structures such as, but not limited to, the Old House Borer.
[[Image here]]
“This is not a structural report. A wood destroying organism inspector is not ordinarily a construction or building trade expert and is therefore not expected to assess structural soundness.... ”
The five organisms listed on the face of the report were: subterranean termites, powder post beetles, wood-boring beetles, dry wood termites, and wood-decaying fungus. The report completed by Cell-Pest, dated August 27, 1993, was negative for active or previous infestation of these listed organisms.
On October 6, 1993 the Alabama Department of Agriculture and Industries conducted an investigation and noted the presence of surface-staining fungi. In October of 1994, the Bennetts retained the services of David Carlysle, a structural engineer who issued a report to them following an investigation of their home, revealing extensive water damage to their home, caused by rain entering the home over a time span of several years.
A summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), A.R. Civ. P. The movant has the burden of “showing material facts, which, if uncontested, entitle the movant to judgment as a matter of law.” Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989); Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110, 1111 (Ala.1977).
Cell-Pest supported its motion for summary judgment with an affidavit from Walter Gammill, an entomologist licensed as a household pest control operator for the past 17 years. Mr. Gammill states, in his affidavit signed on February 14, 1995, that “the wood staining fungi found in the crawl space of the Bennetts’ residence is not a wood destroying organism.” He also states that it is his opinion that the Official Alabama Wood Infestation Inspection report dated August 27, 1993, was filled out correctly by Cell-Pest. In addition, Cell-Pest supported its motion for summary judgment with the Alabama Wood Infestation Inspection Report completed by its representatives and dated August 27,1993. This form stated, in part: “Inspection of the structure(s) listed below was/were performed by a qualified inspector employed by this firm to determine the presence or previous presence of an infestation of the listed organisms and is not a report of damage.” Thus, Cell-Pest made a prima facie showing that no genuine .issue of material fact existed in regard to its inspection of the residence.
Once the moving party has made a prima facie showing that no genuine issue of material fact exists, the burden of proof shifts to the nonmovant, who must present substantial evidence in support of his position, so as to create a genuine issue of material fact. Allen v. Storie, 579 So.2d 1316, 1318 (Ala.1991). Thus, the burden shifted to the Bennetts to provide, in support of their position, substantial evidence that no inspection was performed or that an inspection was either negligently'performed or negligently reported. We are mindful that in reviewing a summary judgment, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Banners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Rule 56 must be read in conjunction with the “substantial evidence rule.” Ala.Code *1126 1975, § 12-21-12. Hurst v. Alabama Power Co., 675 So.2d 397, 398 (Ala.1996). In order to defeat a party’s properly supported motion for summary judgment, the nonmovant must present “substantial evidence” creating a genuine issue of material fact. “Substantial evidence” is defined as “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida., 547 So.2d 870, 871 (Ala.1989).
The Bennetts filed a motion opposing Cell-Pest’s motion for summary judgment and supported this motion with an affidavit by David Carlysle, which stated that Carlysle was an “expert in structural engineering.” There was only one reference contained in the affidavit concerning Mr. Carlysle’s expertise regarding wood-destroying organisms and the Official Alabama Wood Infestation Report. Mr. Carlysle stated that he was “familiar with the inspection of structures for wood destroying organisms” and was also “familiar with the Official Alabama Wood Infestation Report prescribed by the Department of Agriculture and Industries of the State of Alabama.” Mr. Carlysle expressed the opinion that the Official Alabama Wood Infestation Report completed by Cell-Pest in preparation for the closing of the sale of the Griffins’ home to the Bennetts, was not correctly completed because it failed to mention the presence of wood-decaying fungus.[1]
We are not convinced that the statements contained in Mr. Carlysle’s affidavit regarding his familiarity with wood infestation are sufficient to qualify him as an expert in the field of wood-destroying organisms.- However, we note that Cell-Pest did not object to the opinions expressed in Mr. Carlysle’s affidavit regarding this matter. In addition, the order entered by the trial judge makes no specific finding concerning Mr. Carlysle’s qualifications as an expert.
It is possible that the trial judge determined that Mr. Carlysle lacked qualifications in the area of wood infestation and based the summary judgment in favor of Cell-Pest on that determination. Unfortunately, in the absence of a specific finding in the trial court’s summary judgment, we cannot speculate as to the reasoning upon which the judgment was based.
In light of the fact that the Bennetts’ objection to the summary judgment motion was supported by an expert, we cannot say that the Bennetts’ motion in opposition was not supported by substantial evidence. Thus, we conclude that the trial judge erred in entering the summary judgment in favor of Cell-Pest.
We affirm the summary judgment as to the Griffins, and reverse that judgment as to Cell-Pest and remand the ease for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES and MONROE, JJ., concur.
ROBERTSON, P.J., and CRAWLEY, J., concur in the result.

. The parties’ experts also disputed the advisability of the installation of a moisture barrier. However, the language contained in the Cell-Pest inspection form in paragraph 4, under the caption "Conditions Governing this Report”, specifically limited required disclosure of recommendations for moisture barriers to those barriers that would correct conditions causing wood-destroying infestations. It is, therefore, unnecessary to review this factual dispute separately, because any required recommendation for application of a moisture barrier under the terms of Cell-Pest's agreement, would exist only as a result of the presence of wood-destroying fungi.