The defendants, Jerry Stoner and Connie Stoner, appeal from the trial court's denial of their motion for a judgment notwithstanding the verdict (JNOV) or for a new trial. We reverse and remand.
In 1989, Jerry Stoner built a house in Madison County in which he and his wife Connie lived for approximately two and one-half years. In January 1992, the Stoners agreed to sell their house to the plaintiffs, Steve Anderson and his wife Sharon Anderson. Sharon Anderson testified that she and her realtor walked through the house at that time, but that Steve Anderson only drove by and looked at the outside of the house. Connie Stoner was at home when Sharon Anderson looked at the house, but, she said, she remained in the living room. Both women testified that Sharon Anderson asked who had built the house, that Connie Stoner replied that her husband had built it, and that Connie Stoner told Sharon Anderson that her husband also had built a house in Tennessee in which they had lived for approximately three years. Connie Stoner testified that Sharon Anderson did not ask her anything else about the house. Steve Anderson signed a contract to purchase the house for $70,000.
The Andersons applied for an FHA loan with BancBoston Mortgage Corporation. During the loan application process, the Andersons signed two forms advising them that neither the Department of Housing and Urban Development nor BancBoston warranted the physical condition of the property they wished to purchase. Both forms also advised the Andersons that they should inspect the property. It is undisputed that the Andersons did not have the property inspected professionally and that they did not inspect it themselves. The property was appraised for BancBoston by F.L. Clark; the Andersons paid for that appraisal. The Andersons' loan with BancBoston was not approved, however. By that time, the Andersons had rented to someone else the house in which they had been living, so the Stoners agreed to allow the Andersons to move into their house prior to closing. On February 29, 1992, the Andersons signed an "occupancy agreement," under the terms of which they were allowed to move into the Stoners' house in exchange for the payment of $28.66 per day in rent.
The Andersons then applied for a conventional loan with Molton, Allen Williams Corporation. F.L. Clark appraised the house again; the Stoners paid for that appraisal. Jerry Stoner testified that Clark required him to make certain minor repairs to the house and that he made those repairs as requested. The conventional loan was approved, and on March 31, 1992, after the Andersons had lived in the house for approximately one month, the Andersons and the Stoners closed the sale of the house. Steve Anderson and Jerry Stoner met for the first time at the closing. All parties testified that only "casual" conversation occurred during the closing process and that they did not discuss the condition of the house in any way.
The Andersons testified that during the month before closing, while they were living in the house, they noticed a gurgling sound in the plumbing, but, they said, they attributed the sound to the septic tank. The Andersons said they never had lived in a rural area before and never had owned a house with a septic tank. They said they did not mention the gurgling sound to the Stoners. It is undisputed that at no time before or during the closing did the Andersons ask the Stoners anything about the plumbing in the house or investigate the gurgling sound. As the weather got warmer, the Andersons said, they began to notice a foul odor in the house. The Stoners testified that they never heard any gurgling sounds or smelled any foul odor during the time they lived in the house.
In June 1992, the Andersons discovered that a pipe under the dishwasher was broken and called the Roto-Rooter company to repair the pipe. An employee of Roto-Rooter informed the Andersons that the plumbing in the house had not been installed in a proper manner, that the plumbing was not vented to the outside, that the smell in the house was caused by a buildup of methane gas, and that *Page 1142 
they needed to have the entire plumbing system repaired, at an estimated cost of $2,500. The Andersons obtained a second estimate of $2,800 to repair the plumbing. They also obtained an estimate of $700 for repairing the sheetrock that would need to be torn out to repair the plumbing. In August 1992, Steve Anderson wrote to the Stoners about the plumbing problems, stating that the estimated repair costs would be $2,800 for the plumbing and $700 for the sheetrock, plus an estimated $1,050 for a place for the family to stay for two weeks while the work was done. Jerry Stoner telephoned Steve Anderson after he received the letter and gave Anderson the name and telephone number of a plumber he thought would do the work at a lower price. Stoner testified that he was trying to help Anderson keep his costs down; Anderson testified that he thought Stoner intended to help pay for the repairs. After getting a third estimate of $1,500, Anderson says, he telephoned Stoner, but he says Stoner told him that he no longer owned the house and that it was not his problem.
The Andersons sued the Stoners and F.L. Clark, alleging that they had made fraudulent, reckless, or willful misrepresentations to the Andersons and that they had fraudulently suppressed material facts about the condition of the plumbing. The Andersons also alleged against the Stoners a breach of an implied warranty of habitability and against Clark a breach of contract. Clark settled with the Andersons for $1,500. The Andersons testified that they then had the plumbing in the house repaired. The Andersons' claims against the Stoners proceeded to trial.
Steve Anderson testified that he based his fraud claims on representations made by the Stoners in the sales contract. That contract was a standard printed form contract used by realtors in the Madison County area. On the front of the form, in a blank section for "additional provisions," is a handwritten paragraph that states: "Seller to pay any required repairs." Contained in the boilerplate language on the back of the form is the following paragraph:
"14. WARRANTIES:
 "Seller agrees to deliver all appliances, heating, cooling, electrical, gas, and plumbing systems in normal operating condition when title is passed or possession is given, whichever occurs first. It is the Purchaser's responsibility to make any inspection he/she deems necessary prior to occupancy or closing. . . ."
Sharon and Steve Anderson say they also relied on the appraisals, thinking that the house was being inspected. The only mention of the plumbing system on the appraisal is a box labeled "Avg." that is checked beside the words "Plumbing — Adequacy Condition."
The Andersons testified that the plumbing repairs cost $1,500 and that they had to wait approximately a year before they could afford to hire someone to repair the plumbing. Steve Anderson testified that he could not afford to hire someone to replace the sheetrock, so he did the work himself. He did not testify, however, about the cost of his materials. Sharon Anderson stated that her children were sick with respiratory infections more often during the year in which they lived in the house before the plumbing was repaired and that she thought the methane gas in the house was the cause of their frequent illnesses. She said, however, that she never discussed with the children's doctor her theory about the cause of their illnesses. The Andersons testified that they were unable to move from their home while the repairs were being made and that the smell in the house from the methane gas was very embarrassing to them. They stated they were unable to invite people over to visit because of the smell.
Jerry Stoner testified that he had done most of the work involved in building the house, but had not done the plumbing. He stated that a man who identified himself as a plumber came to the site while the house was under construction and asked if he could do the plumbing work; that the man said he did plumbing work for "Campbell" (a general contractor who was working on several houses in the subdivision where the house was located); that he had seen the man in the area; and that he thought the man would be reliable if he worked for Campbell. Stoner *Page 1143 
said he did not know the man's name. Stoner testified he could not remember what he paid the man to do the plumbing and that he could not find a cancelled check or other documentation from 1989 about the plumbing. At his deposition, Stoner testified that he thought he had paid $250 to have the plumbing "roughed in," but at trial he said he thought he had paid $700. The Andersons called Harold Campbell as a witness; he testified that he had done all of the plumbing work for Campbell Brothers Construction in 1989 and that he had never done any work for the Stoners. Connie and Jerry Stoner both testified that they had had no problems with the plumbing while they lived in the house, that they did not know that the plumbing was not vented, and that as far as they knew the plumbing was operating normally when they sold the house.
At the close of the Andersons' evidence, the trial court denied the Stoners' motion for a directed verdict as to all of the Andersons' claims except a claim alleging "negligent misrepresentation." At the close of all the evidence, each side moved for a directed verdict; the court denied the motions. The court provided the jury with a verdict form that gave it three choices: it could find for the Andersons on the fraud claims, assessing compensatory and punitive damages; it could find for the Andersons on the implied warranty of habitability claim, assessing compensatory damages; or it could find for the Stoners. The jury returned a verdict in favor of the Andersons on their fraud claims, assessing compensatory damages of $12,500 and punitive damages of $5,000. After the trial court denied the Stoners' motion for a JNOV or a new trial, they appealed.
The Stoners contend that the Andersons did not present the substantial evidence of fraud necessary to submit the fraud claims to the jury. They also contend that the jury's verdict is contrary to the evidence and that the damages awarded by the jury were excessive.
When reviewing a ruling on a motion for JNOV, this court uses the same standard used by the trial court in granting or denying a motion for a directed verdict. Griggs v. Finley,565 So.2d 154 (Ala. 1990). " 'Granting a motion for JNOV is proper "only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ" and the moving party is entitled to judgment as a matter of law.' " Id. at 159 (quotingAlpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162
(Ala. 1988)) (citation omitted).
Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350
(Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present substantial evidence in order to withstand a motion for a directed verdict or a motion for a JNOV. See § 12-21-12, Ala. Code 1975; West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a directed verdict or a JNOV, this court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id.
Regarding a question of law, however, this court indulges no presumption of correctness as to the trial court's ruling.Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992).
Furthermore, a jury verdict is presumed to be correct, and that presumption is strengthened by the trial court's denial of a motion for a new trial. Cobb v. MacMillan Bloedel, Inc.,604 So.2d 344 (Ala. 1992). In reviewing a jury verdict, an appellate court must consider the evidence in the light most favorable to the prevailing party, and it will set aside the verdict only if it is plainly and palpably wrong. Id.
We first address the Andersons' claim that the Stoners suppressed a material fact.
 " 'Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential *Page 1144 
relations of the parties or from the particular circumstances of the case.' [§ 6-5-102, Ala. Code 1975.]
 "Thus, to prove fraudulent suppression, a plaintiff must show (1) a duty to disclose the facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his injury. 'Silence is not actionable fraud absent a confidential relationship or some special circumstances imposing a duty to disclose.' "
Cato v. Lowder Realty Co., 630 So.2d 378, 382-83 (Ala. 1993) (quoting Wilson v. Brown, 496 So.2d 756, 759 (Ala. 1986)) (citations omitted). We conclude that the Andersons failed to prove fraud on the basis that the Stoners suppressed a material fact, because, as a matter of law, the Stoners had no duty to disclose to the Andersons the condition of the plumbing.
When parties to a transaction deal at arm's length, with no confidential relationship, no obligation to disclose arises when information is not requested. Trio Broadcasters, Inc. v.Ward, 495 So.2d 621 (Ala. 1986). Of particular relevance to this case is the rule of law that sellers of used residential property[1] have no duty to disclose defects to a purchaser unless a fiduciary relationship exists between the parties or unless the buyer "specifically inquires about a material condition concerning the property, in which case the seller has an obligation to disclose known defects." Cato, 630 So.2d at 382. No fiduciary relationship existed between these parties, and the testimony at trial was undisputed that the Andersons made no inquiries that would have obligated the Stoners to disclose the defective condition of the plumbing if they had known about it. The Stoners' motion for a JNOV should have been granted as to the claim alleging fraudulent suppression of material facts.
We now address the Andersons' claim that the Stoners misrepresented to them the condition of the plumbing. "Legal fraud" is defined in § 6-5-101, Ala. Code 1975:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
To prevail on a fraud claim, a party must prove (1) that there was a false representation; (2) that the false representation concerned a material existing fact; (3) that the party relied upon the false representation; and (4) that the party was damaged as a proximate result of relying on the false representation. Cowen v. M.S. Enterprises, Inc.,642 So.2d 453 (Ala. 1994). Reliance is unjustifiable as a matter of law only if the representation was " 'so patently and obviously false that [the plaintiffs] must have closed [their] eyes to avoid the discovery of the truth.' " Hickox v. Stover,551 So.2d 259, 263 (Ala. 1989) (quoting Southern States Ford, Inc.v. Proctor, 541 So.2d 1081, 1092 (Ala. 1989)) (interpolations in Hickox).[2]
After reviewing all of the evidence presented at trial, we find that the only representation made by the Stoners to the Andersons regarding the plumbing was the boilerplate paragraph in the sales contract stating that the sellers warranted that the plumbing would be in normal operating condition at the time of the sale. Although we doubt that the parties seriously relied upon the contract's boilerplate language, the sellers signed the contract containing the representation and it ultimately proved to be false, *Page 1145 
because the unvented plumbing was not in "normal" operating condition. If anything, under the evidence that misrepresentation could be only unintentional fraud. Indeed, there is no evidence that the Stoners made any representation to the Andersons regarding the plumbing that could be considered a misrepresentation "made willfully to deceive, or recklessly without knowledge." The Stoners' motion for a JNOV should have been granted as to the claims alleging willful and reckless misrepresentations. Nevertheless, a misrepresentation "made by mistake and innocently and acted on by the opposite party" still may constitute "legal fraud." The Andersons presented sufficient evidence of legal fraud to have that claim submitted to the jury.
The motion for a JNOV also should have been granted as to the Andersons' claim alleging deceit. "Deceit" is defined as a "[w]illful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury." § 6-5-103, Ala. Code 1975. An action alleging deceit under §§ 6-5-103 and -104 results from either a willful or a reckless misrepresentation or a suppression of material facts accompanying an intent to mislead. Whitlow v. Bruno's, Inc.,567 So.2d 1235 (Ala. 1990). The record indicates no evidence of willful or reckless misrepresentation and no suppression of material facts; therefore, the Andersons cannot prevail on their claim of deceit.
The case should not have been submitted to the jury on the claims of willful and reckless misrepresentations, deceit, and suppression of a material fact; therefore, we cannot conclude that the jury's verdict was based upon any properly submitted claims. The Stoners are entitled to a JNOV as to those claims and to a new trial on the one remaining claim, unintentional fraud. See Nail v. Jefferson County Truck GrowersAss'n, Inc., 542 So.2d 1208 (Ala. 1988); Cincinnati Ins. Co. v.Little, 443 So.2d 891 (Ala. 1983).
Because we hold that the Stoners are entitled to a new trial, we need not address their argument that the damages awarded were excessive.
The judgment is due to be, and it is hereby, reversed. The cause is remanded with instructions to the trial court to enter a JNOV in favor of the Stoners on the Andersons' claims of willful and reckless misrepresentations, deceit, and fraudulent suppression of a material fact; and to grant the Stoners' motion for a new trial on the claim of unintentional fraud.
The foregoing opinion was prepared by Sam A. Beatty, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the judges concur.
[1] We note that the Andersons mistakenly believed that they had purchased a new home. Our supreme court has held that a house was a "used" residence where a builder had constructed it for his own personal use and had lived in it for almost two years before selling it. O'Connor v. Scott, 533 So.2d 241 (Ala. 1988). Because the Andersons purchased a used home, rather than a new one, no warranty of habitability applied to the Stoners' sale of their home. Haygood v. Burl Pounders Realty, Inc.,571 So.2d 1086 (Ala. 1990).
[2] We note that the "justifiable reliance" holding of Hickox has been overruled by our supreme court in Foremost Ins. Co. v.Parham, 693 So.2d 409 (Ala. 1997). In Foremost Ins. Co., the supreme court replaced the "justifiable reliance" standard with the "reasonable reliance" standard. That new standard, however, applies only to fraud cases filed after March 14, 1997.